STATE *ex rel* WAYNE PROSECUTOR v DIVERSIFIED
THEATRICAL CORPORATION

1. NUISANCE—OBSCENITY—LEWDNESS—STATUTES.

   The showing of obscene films within a building falls within the
   meaning of a use of the building for the purpose of "lewdness"
   under the public nuisance act (MCLA 600.3801).

2. NUISANCE—EQUITY—APPEAL AND ERROR—STATUTES.

   Proceedings under the public nuisance act are equitable in nature
   and review by the Court of Appeals is *de novo* on the record
   (MCLA 600.3801 *et seq.).*

3. NUISANCE—OBSCENITY—LEWDNESS—STATUTES—DEFINITION—HARD-
   CORE SEXUAL CONDUCT—CASE PRECEDENT.

   The terms "lewd" and "obscene" are used in the civil and
   criminal obscenity statutes, but are not defined therein, and the
   courts of Michigan in reviewing actions brought under these
   statutes have used the then-existing definition of obscenity
   espoused by the United States Supreme Court; because this is
   the way Michigan has chosen to define such terms, the term
   "lewdness" as used in the public nuisance act is limited to
   those types of patently offensive depictions or descriptions of
   hard-core sexual conduct given as examples in current Federal
   case law.

4. NUISANCE—CONSTITUTIONAL LAW—VAGUENESS.

   The public nuisance act is not unconstitutionally vague (MCLA
   600.3801).

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4, 6] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity §§ 1, 29.
58 Am Jur 2d, Nuisances § 17.
[2] 50 Am Jur 2d, Lewdness, Indecency, and Obscenity § 42.
[5, 7] 4 Am Jur 2d, Amusements and Exhibitions §§ 20, 21, 37.
   Power of municipality in respect of inspection and censorship of
   motion-picture films. 126 ALR 1363.
   Open-air motion-picture theater or other outdoor dramatic or musi-
   cal entertainment as a nuisance. 144 ALR 1261.

5. Nuisance—Statutes—Padlocking—Sale of Fixtures—Constitutional Law— First Amendment—Prior Restraint.

Provisions of the public nuisance act which call for the padlocking of a building declared to be a nuisance and for the sale of its fixtures and contents do not unconstitutionally impose a prior restraint on materials presumptively protected by the first amendment when applied to movie houses which exhibited obscene films because the sanctions imposed by the statute only prevent the future showing of films in the particular buildings which are the subject of the action and do not restrict the right of the owners and operators to show films in the future (US Const, Am 1; MCLA 600.3825).

6. Obscenity—Definitions—Guidelines—Case Precedent.

The guidelines set forth by the United States Supreme Court to determine whether material is obscene are: (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

7. Injunction—Scope—Theater Owners—Nuisance.

A trial judge has authority under the public nuisance act to order theaters closed and the furniture, fixtures and contents sold, but a trial judge's order perpetually enjoining motion picture theater owners and their servants, agents or employees from permitting their theater buildings to be used for the purpose of lewdness is too broad (MCLA 600.3801 et seq.).

Appeal from Wayne, Thomas J. Foley, J. Submitted Division 1 September 23, 1974, at Detroit. (Docket No. 20165.) Decided March 4, 1975. Leave to appeal granted, 394 Mich 803.

Complaint by the State of Michigan upon relation of William L. Cahalan, Wayne County Prosecuting Attorney, against Diversified Theatrical Corporation, Pussycat Theatres of Michigan, Inc., Jean Schumer, Penthouse Theatres, Inc., Lido Cinema Corporation, Highland Theatre Corporation,

Leonard Brooks, and others, for an injunction against the exhibition of lewd motion pictures, for an order of abatement of nuisances, and an order closing defendants' buildings. Judgment for plaintiff. Defendants appeal. Affirmed with modification.

*William L. Cahalan,* Prosecuting Attorney, and *William Leo Cahalan* and *Rheo C. Marchand,* Assistants Prosecuting Attorney, for plaintiff.

*Taylor & Rubin,* for defendants Diversified Theatrical Corporation, Highland Theatre Corporation, and Leonard Brooks.

*Taylor & Rubin,* and *Fleishman, McDaniel, Brown & Weston,* for defendants Pussycat Theatres of Michigan, Inc., Jean Schumer, Penthouse Theatres, Inc., and Lido Cinema Corporation.

Amicus Curiae: City of Detroit, by *Elliott S. Hall,* Corporation Counsel, and *Maureen P. Reilly* and *John E. Cross,* Assistants Corporation Counsel.

Before: V. J. BRENNAN, P. J., and J. H. GILLIS and BASHARA, JJ.

V. J. BRENNAN, P. J. Defendants, individually and as corporate entities, own, lease, conduct, maintain and/or operate motion picture theatres in the County of Wayne.

On July 5, 1973, plaintiff, William L. Cahalan, Wayne County Prosecutor, filed an action against defendants herein, and others, under the provisions of MCLA 600.3801, *et seq.;* MSA 27A.3801, *et seq.;* generally known as the public nuisance act. The complaint alleged that the said theatres were exhibiting "lewd" motion pictures, and, as such, the defendants were subject to a one-year padlock-

ing as a public nuisance pursuant to MCLA 600.3801 which provides in pertinent part:

"Any building, vehicle, boat, aircraft or place used for the purpose of *lewdness,* assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, or used for the unlawful manufacture, storing, possessing, transporting, sale, keeping for sale, giving away, bartering, furnishing or otherwise disposing of any narcotic and/or hypnotic drug as defined by law or of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is hereby declared a nuisance and the furniture, fixtures and contents of any such building, vehicle, boat, aircraft, or place and all such intoxicating liquors therein are also declared a nuisance, and all such narcotic and/or hypnotic drugs and nuisances shall be enjoined and abated as hereinafter provided, and as provided in the court rules. Any person, or his servant, agent or employee who shall own, lease, conduct or maintain any building, vehicle or place used for any of the purposes or by any of the persons above set forth or where any of the acts above enumerated are conducted, permitted or carried on, is guilty of a nuisance." (Emphasis supplied.)

Attached to the complaint were the affidavits of several police officers representing in their official capacities the various communities wherein the alleged acts of "lewdness" were committed. The acts set forth in these affidavits described in each instance the various sexual acts depicted in the films occurring between nude persons of both sexes.

The prayer of the complaint requested that the court find in respect to each defendant that a nuisance was being permitted and maintained on the various premises and that the court enter an order perpetually enjoining the various defendants

from permitting or suffering a continuance of the nuisance and, further, that an order of abatement be entered in respect to each building directing the removal of all furniture, fixtures and contents from the buildings and directing the sale thereof in the manner provided for in MCLA 600.3825; MSA 27A.3825. An order closing each of the buildings for a period of one year was also sought. It was further requested, and the trial court granted, an order restraining each of the defendants and their servants, agents or employees from removing, selling, pledging, bartering, granting a security interest in, giving them by gift or otherwise disposing of, or alienating any interest in the furniture, fixtures and contents of the buildings, including motion picture films. The plaintiff also requested such other and further relief as was agreeable to equity and good conscience.

The defendants filed answers and motions for summary judgment. The motions were denied by the Honorable Thomas J. Foley, Wayne County Circuit Judge, on April 17, 1974. On the same date trial commenced before Judge Foley sitting with an advisory jury. The advisory jury was impaneled for the purpose of determining whether the films in question were obscene. On the issue of obscenity, the plaintiff introduced the several films in question, namely, "The Devil In Miss Jones", "It Happened In Hollywood", "Deep Throat", and "Little Sisters". The defendants called Dr. John Jacob Hartman, a psychologist and assistant professor at the University of Michigan.

Dr. Hartman testified that he had seen the four movies involved herein. He indicated that he was familiar with the test of obscenity and was requested to apply the guidelines to each of the works in question. Doctor Hartman testified that

the films in question were not obscene; that the average person, applying contemporary community standards would find that the films, taken as a whole, did not appeal to the prurient interest; that the films, taken as a whole, did not depict or describe sexual conduct in a patently offensive way; and that the films, taken as a whole, had serious literary and artistic value. On cross-examination, Doctor Hartman testified that different people would have different opinions about a film and that artistic value depended on each person's subjective standard or individual taste. In addition to Doctor Hartman's testimony there were several stipulations at the trial. The stipulations established ownership and established that the police officers who signed the affidavits in the complaint were over the age of 18 and paid admission to see the films in question. It was further stipulated that on the date in question a person had to be 18 to properly gain admission to the defendant theatres to see the films which are the subject of this action.

At the close of plaintiff's case, the defendants moved to dismiss, alleging that the public nuisance act, on its face and as construed and applied, violated constitutional guarantees of both the Federal and state constitutions. The trial court denied the motion.

On April 24, 1974 the case was submitted to the jury. The trial judge instructed the jury that the term "lewdness," as used in MCLA 600.3801; MSA 27A.3801, was synonymous with obscene and then proceeded to instruct the jury on the three-prong test of *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973), providing the jury with specific examples of the type of sexual conduct prohibited from being portrayed.

The jury found each of the four films, "The Devil In Miss Jones", "Deep Throat", "It Happened In Hollywood" and "Little Sisters" to be lewd.

On May 1, 1974, Judge Foley issued a judgment and order pursuant to MCLA 600.3801, *et seq.;* MSA 27A.3801, *et seq.;* wherein he ordered, *inter alia,* that the furniture, fixtures and contents of the buildings and places known as Krim I and Krim II Theatres, Pussycat Theatre, Penthouse Theatre, Lido Theatre, and Highland Theatre be removed and sold in the manner provided for the sale of chattels under execution, and that the buildings and places be effectually closed against their use for any purpose and be kept closed for a period of one year, unless sooner released pursuant to the provisions of MCLA 600.3801, *et seq.;* MSA 27A.3801, *et seq.*

On May 1, 1974 the defendants filed a claim of appeal in this Court, together with a motion for a stay of execution of judgment pending appeal and a motion for immediate consideration. On May 6, 1974, this Court granted the stay only insofar as the judgment ordered the removal and sale of the furniture, fixtures and contents of the buildings. This Court refused to stay that portion of the judgment padlocking the theatres for one year. On May 10, 1974, the Michigan Supreme Court granted a stay of the judgment. The order granting the stay provided that the motion for a stay of judgment pending appeal to this Court be granted in its entirety, on the condition that defendants pursue their appeal timely, in accordance with this Court's order of May 6, 1974. This they have done.

Defendants first argue that the statute here involved, MCLA 600.3801, *et seq.;* MSA 27A.3801,

*et seq.,* does not apply to motion picture theatres exhibiting obscene films. We find defendants' arguments in this regard totally unpersuasive. MCLA 600.3801; MSA 27A.3801 provides, in relevant part:

"Sec. 3801. Any building, * * * used for the purpose of lewdness, assignation or prostitution * * * is hereby declared a nuisance and the furniture, fixtures and contents of any such building, * * * are also declared a nuisance, and all such * * * nuisances shall be enjoined and abated as hereinafter provided, and as provided in the court rules."

The statute, by its own terms, refers to a building "used for the purpose of lewdness". Does the showing of obscene films fall within the meaning of lewdness? We believe it does. "Lewdness" is defined as "the quality or state of being lewd". Webster's Third New International Dictionary (1965), p 1301. "Lewd" is defined as: "sexually unchaste or licentious; dissolute, lascivious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, salacious." Webster's Third New International Dictionary (1965), p 1301. Furthermore, Black's Law Dictionary (4th Ed, Revised), p 1052, defines "lewd" as "obscene".

From the above it can clearly be seen that lewd and obscene are synonymous. Indeed, we believe that this is the generally understood meaning of the term. For us to say that the showing of obscene films does not fall within the meaning of "lewdness" would require us to ignore reality. Accordingly, we hold that MCLA 600.3801, *et seq.;* MSA 27A.3801, *et seq.,* does apply to the type of activity here sought to be prevented.

Defendants next claim that the statute is not

sufficiently precise to meet the specificity requirements of *Miller* and that it is unconstitutionally vague. These same claims were presented to the trial judge and rejected. The trial judge construed the term "lewd" in the statute here involved to be synonymous with obscene and so instructed the jury. He then proceeded to instruct the jury on the three-prong test of *Miller* providing specific examples of the type of conduct proscribed by MCLA 600.3801; MSA 27A.3801. Defendants argue that the trial judge was without authority to give the statute this saving construction.

In *Kent County Prosecutor v Goodrich Corporation,* 53 Mich App 267; 218 NW2d 771 (1974),[1] it was held that the only courts of this state which could "authoritatively construe" the Michigan civil obscenity statute, MCLA 600.2938(1); MSA 27A.2938(1), were courts of last resort, *i.e.,* the Michigan Court of Appeals or the highest court in the state, the Michigan Supreme Court. Whatever the merits of that decision may be in this regard, a question which we do not here decide, we do not believe that it in any way impairs our ability to review the instant case. Proceedings under the public nuisance act are equitable in nature and our review is *de novo* on the record. *People ex rel Allegan Prosecuting Attorney v Harding,* 343 Mich 41; 72 NW2d 33 (1955), *State ex rel Wayne Prosecuting Attorney v Weitzman,* 21 Mich App 705; 176 NW2d 463 (1970). While the trial judge here did construe the statute and provide specific types of conduct for the jury's consideration, we do not base our decision on his construction of the statute, but, rather, on the construction of the statute

[1] Leave to appeal to the Michigan Supreme Court was applied for by plaintiffs and, by order dated July 10, 1974, the application was held in abeyance by our Supreme Court pending decision in the case of *People v Floyd Bloss.* (Order of 7-10-74, #55873)

which we make today and on the facts as found by our *de novo* review of the record.

Defendants' claims that the statute is constitutionally deficient under *Miller* and because of vagueness must be judged against the practice of this state to look to the decisions of the United States Supreme Court for the definition of what is obscene. The criminal obscenity statute, MCLA 750.343a; MSA 28.575(1), and the civil obscenity statute, MCLA 600.2938; MSA 27A.2938, like the statute with which we are here concerned, phrase their prohibitions without specifically defining the terms used to describe what is proscribed. The civil and criminal obscenity statutes use the terms "lewd" and "obscene" but provide no precise definition of those terms. In the past, the courts of this state, in reviewing actions brought under these statutes, have used the then-existing definition of obscenity espoused by a majority of the United States Supreme Court. See *People v Lon Johnson,* 29 Mich App 118, 123; 185 NW2d 150, 152 (1970), *People v Wasserman,* 27 Mich App 16, 20–21; 183 NW2d 313, 315–316 (1970), *Wayne County Prosecutor v Doerfler,* 14 Mich App 428, 459–460; 165 NW2d 648, 663 (1968). See also *People v Villano,* 369 Mich 428, 437; 120 NW2d 204, 208 (1963). The prohibitions of those statutes were read to encompass within their terms the types of material which fell within the then-existing constitutional definition of obscenity. The same applies to the statute here invoked, for this is how our state has chosen to define such terms.

We recognize that the courts of other states have chosen not to authoritatively construe their statutes so as to conform to the requirements of *Miller,* choosing instead to leave that task to their legislatures. See, *e.g. Stroud v State,* 300 NE2d 100

(Ind, 1973), *Mohney v State,* 300 NE2d 66 (Ind, 1973), *State v Wedelstedt,* 213 NW2d 652 (Iowa, 1973), *State v Shreveport News Agency Inc,* 287 So 2d 464 (La, 1973), *Commonwealth v Horton,* — Mass —; 310 NE2d 316 (1974). However, courts in other states have not felt so limited. See, *e.g. Gibbs v State,* 255 Ark 997; 504 SW2d 719 (1974), *Ebert v Maryland State Board of Censors,* 19 Md App 300; 313 A2d 536 (1973), *State v Welke,* 498 Minn 402; 216 NW2d 641 (1974), *State v Bryant,* 285 NC 27; 203 SE2d 27 (1974), *State v J-R Distributors, Inc,* 82 Wash 2d 584; 512 P2d 1049 (1973), *State ex rel Chobot v Circuit Court for Milwaukee County,* 61 Wis 2d 354; 212 NW2d 690 (1973). As stated earlier, the courts of this state have consistently followed the definitions of obscenity enunciated by the United States Supreme Court in interpreting our obscenity statutes. We can see no reason for not doing so here. Accordingly, we hold that the term "lewdness" as used in the public nuisance act is limited to those types of patently offensive depictions or descriptions of hard-core sexual conduct given as examples in *Miller v California, supra,* namely:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 US at 25; 93 S Ct at 2615; 37 L Ed 2d at 431.

Defendants' claims of vagueness, therefore, must be judged against this background. See *Hamling v United States,* 418 US 87; 94 S Ct 2887; 41 L Ed 2d 590 (1974).

In *Roth v United States,* 354 US 476; 77 S Ct

1304; 1 L Ed 2d 1498 (1957), the United States Supreme Court said:

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. 'The Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices'. * * * These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark 'boundaries sufficiently distinct for judges and juries fairly to administer the law. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense'." *Roth v United States, supra* at 491–492; 77 S Ct at 1312–1313; 1 L Ed 2d at 1510–1511 (Citations omitted.)

While *Miller* altered the test of obscenity, we do not believe it was intended to affect, or that it did in fact affect, the above holding in *Roth.* Indeed, *Miller* itself recognized that through statutory construction state courts could bring their statutory schemes in line with the holding therein.

Further support for our decision in this regard can be found in the cases of *United States v 12 200-ft Reels,* 413 US 123; 93 S Ct 2665; 37 L Ed 2d 500 (1973), and *Hamling v United States, supra.* In *United States v 12 200-ft Reels, supra,* the United States Supreme Court indicated, in footnote 7, p 130, how such claims of vagueness would be handled. The Court there said:

"We further note that, while we must leave to state courts the construction of state legislation, we do have

a duty to authoritatively construe federal statutes where 'a serious doubt of constitutionality is raised' and 'a construction of the statute is fairly possible by which the question may be avoided.' *United States v Thirty-seven Photographs,* 402 US 363, 369; 91 S Ct 1400; 28 L Ed 2d 822 (1971) (opinion of White, J.), quoting from *Crowell v Benson,* 285 US 22, 62; 52 S Ct 285; 76 L Ed 598 (1932). If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 USC § 1305(a) [19 USCA § 1305(a)] and 18 USC § 1462 [18 USCA § 1462], see *United States v Orito,* 413 US 139, at 140 n 1; 93 S Ct 2674, 2676; 37 L Ed 2d 513, at 516 (1973), we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard-core' sexual conduct given as examples in *Miller v California,* 413 US, at 25; 93 S Ct at 2615; 37 L Ed 2d at 431."

In *Hamling v United States, supra,* the Court was faced with a claim that a federal anti-obscenity statute (18 USC § 1461) was void for vagueness in light of *Miller.* The Court rejected this claim relying on the language of *Roth* quoted earlier and on the language of footnote 7 cited above, despite the fact that the statute involved in *Hamling* was not one to which the Supreme Court made reference in footnote 7. In rejecting the petitioners' vagueness claims the Court in *Hamling* said, in pertinent part:

"*Miller* undertook to set forth examples of the types of material which a statute might proscribe as portraying sexual conduct in a patently offensive way, 413 US, at 25–26 [93 S Ct 2607; 37 L Ed 2d 419], and went on to say that no one could be prosecuted for the 'sale or exposure of obscene materials unless these materials depict or describe patently offensive "hard core" sexual conduct specifically defined by the regulating state law, as written or construed.' *Id.,* at 27 [93 S Ct 2607; 37 L

Ed 2d 419]. As noted above, we indicated in *United States v 12 200-ft Reels of Film,* 413 US, at 130 n 7 [93 S Ct 2665; 37 L Ed 2d 500], that we were prepared to construe the generic terms in 18 USC § 1462 [18 USCS § 1462] to be limited to the sort of 'patently offensive representations or descriptions of that specific "hard core" sexual conduct given as examples in *Miller v California.'* We now so construe the companion provision in 18 USC § 1461 [18 USCS § 1461], the substantive statute under which this prosecution was brought. As so construed, we do not believe that petitioners' attack on the statute as unconstitutionally vague can be sustained." 418 US at 113–114; 94 S Ct at 2906; 41 L Ed 2d at 618–619.

In a statement which has particular relevance here, the Court further said:

"Whatever complaint the distributor of material which presented a more difficult question of obscenity *vel non* might have as to the lack of a previous limiting construction of 18 USC § 1461 [18 USCS § 1461] these petitioners have none. See *Dennis v United States,* 341 US 494, 511–515; 71 S Ct 857; 95 L Ed 1137 (1951) (opinion of Vinson, C. J.)."

From the foregoing, therefore, and in light of the construction of the statute which we have this day adopted, it becomes clear that defendants' claims of vagueness must fail.

Defendants, citing *Bouie v City of Columbia,* 378 US 347; 84 S Ct 1697; 12 L Ed 2d 894 (1964), also argue that a retroactive application of a saving construction of the statute would serve to deny them due process of law. We disagree. A similar claim was recently raised by the petitioners in *Hamling v United States, supra,* and rejected by the United States Supreme Court therein. On the basis of that decision we find no merit to defendants' claims in this regard.

Defendants next argue that the padlock and sale provisions of the public nuisance act, insofar as they apply to movie houses which exhibit obscene films, are unconstitutional because they impose a prior restraint on materials presumptively protected by the first amendment.[2] We disagree. Defendants' arguments in this regard fail to recognize that the nuisance here found to exist is the showing of these particular films and that the sanctions of the statute are imposed, after a full hearing in court, because of past exhibitions and not because of what may or may not be shown in the future. Indeed, the sanctions imposed by the statute do not restrict the right of the defendants herein to legally exhibit films not yet declared obscene. The sanctions simply prohibit the defendants from doing so in these particular buildings. The statute simply imposes a sanction for past acts and affects the right of the owners and operators to exhibit future films only insofar as it precludes them from doing so in these buildings.

Persons convicted of violating this state's criminal obscenity law (MCLA 750.343a; MSA 28.575(1)) are subject to imprisonment for a period of time not to exceed one year. No one could seriously argue that that statute, insofar as it provides for imprisonment, constitutes a prior restraint on a person's first amendment rights simply because during the period of incarceration that person could not show movies he otherwise might have. We can see no difference here, particularly in light of the fact that a sanction less severe than a deprivation of personal liberty is involved.

The statute here does not permit a trial court to

---

[2] Similar claims are presently under consideration by the United States Supreme Court in the cases of *Huffman v Pursue, Ltd,* #73-296; argued 12-10-74 and *MTM, Inc v Baxley,* #73-1119; argued 12-10-74.

enjoin the owners and operators of a theatre from showing future films. All that is permitted is an order to abate the nuisance and the imposition of the padlock and sale provisions of the statute. In this respect, therefore, the case is distinguishable from the factual situation present in *Near v Minnesota,* 283 US 697; 51 S Ct 625; 75 L Ed 1357 (1931).

Because the sanctions imposed by the statute here involved only prevent the future showing of films in the particular buildings which are the subject of this action and do not restrict the right of the owners and operators to show films in the future, mindful, of course, of the laws prohibiting the exhibition of obscene films, we find that MCLA 600.3801 *et seq.;* MSA 27A.3801 *et seq.,* is not unconstitutional because its sanctions impose a prior restraint on materials presumptively protected by the first amendment.

Defendants, citing, among others, *Freedman v Maryland,* 380 US 51; 85 S Ct 734; 13 L Ed 2d 649 (1965), and *Bantam Books v Sullivan,* 372 US 58; 83 S Ct 631; 9 L Ed 2d 584 (1963), argue that any restraint imposed on allegedly obscene movies in advance of a final judicial determination must be extremely brief and governed by specified procedures. They thus observe that MCLA 600.3801 *et seq.;* MSA 27A.3801 *et seq.* does not contain those safeguards and argue that it is, therefore, unconstitutional.

Defendants' arguments are wholly without merit. The cases cited by defendants involve the pre-censorship of films and books by the state prior to a judicial determination of whether they are obscene.

In *Freedman v Maryland, supra,* defendant was convicted for violating a statute making it unlaw-

ful to exhibit a motion picture without first having obtained a license. The Supreme Court, as correctly noted by defendants, placed constraints on the pre-censorship of films. However, the procedures utilized in the instant case, as authorized by the statute, do not provide for pre-censorship. There was no threat of an abatement order until after a full hearing on the facts and until a judicial determination had been made. In the instant case defendants were afforded a judicial hearing conducted before an advisory jury before an abatement order was entered by the trial court. Under these circumstances we find no merit to defendants' contentions.

Defendants also argue that the films in question here may not be condemned as obscene because the record herein clearly establishes that they were exhibited in closed theatres to willing adults only. Defendants' argument in this regard is premised on our Supreme Court's holding in *People v Bloss,* 388 Mich 409; 201 NW2d 806 (1972). The decision in *Bloss,* however, was vacated by the United States Supreme Court and the case was remanded to our Supreme Court for further consideration in light of *Miller v California, supra,* and other related cases.[3] *Michigan v Bloss,* 413 US 909; 93 S Ct 3060; 37 L Ed 2d 1021 (1973). On November 6, 1973, *Bloss* was re-argued before our Supreme Court and the cause is presently awaiting decision. In light of this, any reliance on *Bloss* is certainly misplaced. Until our Supreme Court

---

[3] *Paris Adult Theater I v Slaton,* 413 US 49; 93 S Ct 2628; 37 L Ed 2d 446 (1973), *Kaplan v California,* 413 US 115; 93 S Ct 2680; 37 L Ed 2d 492 (1973), *United States v 12 200-ft Reels of Super 8mm Film,* 413 US 123; 93 S Ct 2665; 37 L Ed 2d 500 (1973), *United States v Orito,* 413 US 139; 93 S Ct 2674; 37 L Ed 2d 513 (1973), *Heller v New York,* 413 US 483; 93 S Ct 2789; 37 L Ed 2d 745 (1973), *Roaden v Kentucky* 413 US 496; 93 S Ct 2796; 37 L Ed 2d 757 (1973), and *Alexander v Virginia,* 413 US 836; 93 S Ct 2803; 37 L Ed 2d 993 (1973).

releases a new decision in *Bloss* clarifying the state of the law in this area, it is our function to review cases of this type in accordance with presently existing decisions of continued validity which define those areas protected by the first amendment.

In *Miller v California, supra,* the United States Supreme Court set forth the following guidelines to be used in determining whether material is obscene:

"(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v Wisconsin* [408 US 229, 230; 92 S Ct 2245; 33 L Ed 2d 312 (1972)], quoting *Roth v United States, supra,* at 489 [77 S Ct 1304; 1 L Ed 2d 1498]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 US at 24; 37 L Ed 2d at 431; 93 S Ct at 2615.

Judged against the above standard, it is clear that the films in question here are lewd. There is no doubt in our mind, after reviewing the films, that the average person, applying contemporary community standards, would find that the films in question, when viewed as a whole, appeal to the prurient interest. The films portray the sexual conduct described earlier in a patently offensive way and, again when viewed as a whole, do not have serious literary, artistic, political or scientific value. All four films clearly depict "hard-core" sexual conduct in a patently offensive way.

We do not believe it is necessary for us to describe the conduct which has led us to this conclusion for this is not a borderline case where

an elucidation of the facts might lend some assistance to those who are interested in determining the bounds beyond which such conduct may not permissibly go. Suffice it to say that the sexual conduct depicted in these films went substantially beyond the mere exhibition of a nude male or female body, see *Jenkins v Georgia,* 418 US 153; 94 S Ct 2750; 41 L Ed 2d 642 (1974), and clearly fell within the two examples of the type of conduct that can be regulated which were expressed in *Miller v California, supra.*

To describe these films in this manner, however, somehow seems inappropriate. Old, well-used and familiar words such as rot, filth, decadent and nauseating more readily come to mind. These films are an example of the type of trash that a few sick, demented minds are spewing out across our country in search of the easy dollar. Films of this type, no doubt, scar the minds of many people, young and old, who, out of a natural curiosity, view them. These films can greatly weaken, if not destroy, the moral and wholesome fiber which the citizens of this country possess in abundance. To permit this moral sabotage to continue would be to ignore the spreading of a deadly plague. At this writing the only gauge we can use to determine just how far and fast this plague has spread is to look at the box office returns which number in the millions of dollars across this country. We are not about to permit this disease to spread. MCLA 600.3801 *et seq.;* MSA 27A.3801 *et seq.* was designed to guard against the spread of the vehicles of such decay by giving the courts of this state the power to impose a harsh sanction on those who choose to deal in the conduct proscribed by this statute. The statute was here properly invoked by the prosecutor and correctly determined to be applicable by the trial judge.

Having determined the films in question here to be lewd and that their exhibition constituted a nuisance within the meaning of MCLA 600.3801; MSA 27A.3801, it is clear that the trial judge had the authority to order the theatres closed for one year and the furniture, fixtures and contents sold. MCLA 600.3825; MSA 27A.3825. The trial judge also ordered, however, that the defendants, their servants, agents or employees be perpetually enjoined from permitting or suffering the theatre buildings to be used "for the purpose of lewdness". Such an order is too broad. The order should have been phrased in terms of perpetually enjoining the nuisances here found to exist, the showing of these particular films. The trial judge's order, therefore, is hereby modified to encompass this change. In all other respects it was correct and within his power to order.

Error is also predicated on the trial judge's instructions to the jury. However, since our decision is based on a *de novo* review of the record and we have applied a legal standard not encompassing the claimed errors, it is unnecessary for us to consider these claims.

Affirmed as modified.