STATE *ex rel* WAYNE COUNTY PROSECUTOR v DIVERSIFIED
THEATRICAL CORPORATION

Docket Nos. 56964, 56965. Argued November 7, 1975 (Calendar No. 3).
—Decided April 1, 1976.

The Wayne County Prosecutor commenced an action under the
statute providing that a place of lewdness, assignation or
prostitution is a public nuisance against defendants Diversified
Theatrical Corporation, Pussycat Theatres of Michigan, Inc.,
Lido Cinema Corporation, Highland Theatre Corporation, Leo-
nard Brooks and Jean Schumer. The defendants operate motion
picture theatres which show films found by an advisory jury to
be obscene under state and Federal constitutional standards.
The complaint sought an order of abatement of nuisances and
an order closing the defendant's theatres which was granted by
the Wayne Circuit Court, Thomas J. Foley, J. The Court of
Appeals, V. J. Brennan, P. J., and J. H. Gillis and Bashara, JJ.,
affirmed with the modification that the injunction should apply
only to the showing of the particular films involved (Docket No.
20165). Defendants appeal. *Held:*

The public nuisance statute was intended to apply to houses
of prostitution and not motion picture theatres where sexual
acts are not committed but are portrayed on the screen. The
meaning of the words "lewdness, assignation or prostitution" is
clear in the light of the history and purpose of these statutes
and cannot properly be expanded by judicial construction.

59 Mich App 223; 229 NW2d 389 (1975) reversed.

1. NUISANCE—OBSCENITY—MOTION PICTURES.

The showing of obscene films within a building is not the use of
the building for the purpose of "lewdness" within the meaning
of the statute providing that a place of lewdness, assignation or
prostitution is a public nuisance (MCL 600.3801; MSA
27A.3801).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur 2d, Constitutional Law § 370; 58 Am Jur 2d,
Nuisances § 17.

2. NUISANCE—OBSCENITY—MOTION PICTURES.

> The meaning of the words "lewdness, assignation or prostitution" in the statute providing that a place used for these purposes is a public nuisance is clear in the light of the history and purpose of such statutes and that meaning cannot properly be expanded by judicial construction to include a place in which obscene motion pictures are shown (MCL 600.3801; MSA 27A.3801).

*William L. Cahalan,* Prosecuting Attorney, *Theodore Stephens,* Chief, Civil Department, and *Stephanie Masis* and *Rheo C. Marchand,* Assistants Prosecuting Attorney, for plaintiff.

*Stephen M. Taylor* and *Fleishman, McDaniel, Brown & Weston, P. C.,* for defendants.

*Amicus Curiae: Kermit G. Bailer,* Corporation Counsel, and *Maureen P. Reilly* and *John E. Cross,* Assistants Corporation Counsel, for City of Detroit.

LEVIN, J. The question is whether a statute which provides that a place of lewdness, assignation or prostitution is a public nuisance[1] can properly be applied to motion picture theatres that show films found to be obscene under state and Federal constitutional standards.[2]

We assume, without deciding, that the films are

---

[1] The Michigan statute provides in part:

"Any building, vehicle, boat, aircraft or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons, * * * is hereby declared a nuisance and * * * shall be enjoined and abated as hereinafter provided * * * ." MCLA 600.3801; MSA 27A.3801.

[2] In *Grove Press, Inc v Philadelphia,* 418 F2d 82 (CA 3, 1969), the Court of Appeals for the Third Circuit enjoined the city from seeking to restrain exhibition of a film as a common-law nuisance. The Court was of the view that the common-law doctrine of public nuisance is "too elastic and amorphous" to both define the standards of protected speech and serve as the vehicle for its restraint.

obscene.[3] We conclude, however, that the statute was intended to apply to houses of prostitution and not motion picture theatres where sexual acts are not committed but are portrayed on the screen.

I

The Michigan statute is one of a number of "red light abatement acts", enacted in the early 1900s[4] to subject houses of prostitution to abatement as

---

[3] Defendants owned or operated the following theatres in Wayne County: Krim I and II Theatres; Pussycat Theatre; Penthouse Theatre; Lido Theatre; Highland Theatre; Follies Theatre; Frisco Theatre; Mel Theatre; Guild Theatre.

On July 6, 1973, the prosecutor commenced an action under the public nuisance statute, MCLA 600.3801, *et seq.;* MSA 27A.3801, *et seq.,* against the theatres.

An advisory jury was convened pursuant to GCR 1963, 509.4, to determine whether the films in question were obscene. The judge instructed the jury that the statutory term "lewdness" is synonymous with "obscenity", and he defined obscenity in accordance with the standards of *Miller v California,* 413 US 15, 24; 93 S Ct 2607; 37 L Ed 2d 419 (1973).

The jury determined that the films "The Devil in Miss Jones", "Deep Throat", "It Happened in Hollywood", and "Little Sisters" were lewd or obscene.

[4] Michigan, 1915 PA 272, p 481 (" * * * or place used for the purpose of lewdness, assignation or prostitution * * * "); Iowa, Laws of the Thirty-Third General Assembly (1909), c 214, p 196 (" * * * or place used for the purpose of lewdness, assignation or prostitution * * * "); Nebraska, Laws 1911, c 63 (" * * * or place used for the purpose of lewdness, assignation or prostitution * * * "); California, Stats 1913, c 17 (" * * * or place wherein or upon which acts of lewdness, assignation or prostitution are held or occur * * * "); Minnesota, Gen Laws 1313 c 562 (" * * * or place used for the purpose of lewdness, assignation or prostitution * * * "); Washington, Sess Laws 1913 c 127 (" * * * or place used for the purpose of lewdness, assignation or prostitution"); Massachusetts, Acts & Resolves 1914, c 624 (" * * * or place used for prostitution, assignation or lewdness * * * "); Colorado, Sess Laws 1915, c 123 (" * * * a public or private place of lewdness, assignation or prostitution * * * "); Illinois, Laws 1915, p 371 (" * * * used for purposes of lewdness, assignation, or prostitution * * * "); New Mexico, Laws 1921, c 90, p 162 (" * * * place upon which lewdness, assignation or prostitution is conducted, permitted, contained or exists * * * ").

nuisances. The Iowa act, passed in 1909, served as a model for similar legislation in at least two other states.[5]

These acts have been applied consistently to houses of prostitution.[6] In 1914, the Nebraska Supreme Court held that evidence that acts of prostitution had occurred at a hotel was insufficient to support a finding that the hotel was a nuisance under the Nebraska statute:

"The title of the act reminds us that it is houses of lewdness, assignation and prostitution that are to be dealt with, and in determining the character of the house in question it is of great, if not controlling, importance to inquire whether it is principally devoted to a legitimate purpose.

*"The object of the statute is to provide an efficient and prompt means for suppressing the so-called 'red light district' in communities that are unwilling to tolerate such a nuisance. The statute is not intended as a means of regulating the morals of private individuals, nor to prevent immorality* in hotels, mainly devoted to the accommodation of families and moral, well-behaved people." [7] (Emphasis supplied.)

The Michigan abatement statute has been ap-

---

[5] *See State, ex rel Carroll v Gatter,* 43 Wash 2d 153, 159; 260 P2d 360, 363 (1953), stating that the abatement statutes of Washington and Nebraska "were modeled after the Iowa abatement statute".

[6] *See, e.g., Gregg v People,* 65 Colo 390; 176 P 483 (1918); *State, ex rel Lundin v Humphrey,* 94 Wash 599; 162 P 983 (1917); *Chase v Proprietors of Revere House,* 232 Mass 88; 122 NE 162 (1919); *State, ex rel Robertson v Stroup,* 131 Minn 308; 155 NW 90 (1915); *People, ex rel Thrasher v Smith,* 275 Ill 256; 114 NE 31 (1916); *State, ex rel English v Fanning,* 97 Neb 224; 149 NW 413 (1914); *People, ex rel Bradford v Arcega,* 49 Cal App 239; 193 P 264 (1920).

Many statutes were subsequently amended to include gambling establishments and places where intoxicating liquor and other contraband could be obtained.

[7] *State v Fanning,* fn 6 *supra,* p 228.

The title of the Michigan act is in pertinent part the same as the title of the Nebraska act.

plied to houses of prostitution.[8] In *People, ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570, 575; 17 NW2d 756 (1945), this Court said:

"The *purpose* of Act No. 389, Public Acts 1925, is to eliminate effectively, by statutory procedure, the use of property, real or personal, in connection with gambling, prostitution, and illicit sale of liquor, et cetera." (Emphasis supplied.)[9]

The Washington Supreme Court similarly declared that the Washington statute was "directed to the abatement of * * * houses of lewdness, assignation, or prostitution" and held that it could not be used to padlock a hotel that was not a house of prostitution.[10]

In *State, ex rel Murphy v Morley,* 63 NM 267; 317 P2d 317 (1957), the Supreme Court of New Mexico held that New Mexico's abatement statute could not be used to enjoin a theatre owner from showing allegedly obscene motion pictures. The Court reviewed the history and purpose of red light abatement acts and concluded that the statu-

---

[8] *State, ex rel Attorney General v Robinson,* 250 Mich 99; 229 NW 403 (1930); *People, ex rel Attorney General v Yarowsky,* 236 Mich 169; 210 NW 246 (1926).

[9] 1925 PA 389 replaced 1915 PA 272. The operative language was unchanged.

[10] "To sustain the application of the act, it must be shown to the satisfaction of the court, by a preponderance of the evidence, that the premises were being used as a house of lewdness, assignation, or prostitution as that term is generally understood. The 'use' of the premises of which the statute speaks, requires more than a showing that sporadic acts of prostitution occurred therein. In the instant case, it can be concluded from the stipulation, that these acts were not sufficient to establish a reputation for the premises other than being a 'decent, orderly, respectable hotel in the community.'

"The statute is not directed to the abatement of commercial eroticism—that is governed by the criminal statutes. It is *directed to the abatement of premises which, by reason of sufficient happenings therein, have absorbed and taken the character of the acts committed, and have in fact become houses of lewdness, assignation, or prostitution."* (Emphasis supplied.) *State v Gatter, supra,* p 160.

tory term "lewdness" [11] applies only to acts of assignation or prostitution.

In *People v Goldman,* 7 Ill App 3d 253; 287 NE2d 177, 178–179 (1972), the state sought to enjoin as a nuisance under the Illinois abatement act premises where obscene materials could be viewed or purchased. The Illinois Court of Appeals, relying on an Illinois Supreme Court opinion which said that the statutory nuisance abatement procedure was applicable to houses of prostitution, concluded:

> *"It appears to us too, that this statute is aimed solely and only at houses of prostitution.* Only if we can equate the statutory 'lewdness' with 'obscenity', would we be justified in characterizing 'places' for its dissemination and display as public nuisances. Obviously, *the words 'assignation' or 'prostitution' in the statute, even with considerable stretching, can hardly be said to cover obscenity.* * * * To fix purpose, we must read text in context and if a word is known by the company it keeps, then 'lewdness' is synonymous with prostitution. This aid contemplates that where two or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations, and give color and expression to each other. For example, an 'assignation' could be an innocent appointment, a chaste tryst, or a rendezvous (even with destiny), at least those are meanings that can be so ascribed to it, but not here in its context with 'lewdness' and 'prostitution'. Thus 'assignation', a euphemism coined years ago to protect the hypersensitive, is synonymous with 'prostitution'. So, too, with 'lewdness'—it must equate with 'prostitution', and 'assignation' in the sense just described, if we are to follow the rule of *noscitur a sociis* and adopt that sense of the word which best harmonizes with its setting."

A California court of appeals similarly con-

---

[11] The court also noted that to interpret "lewdness" as applying to pornographic motion pictures and literature would raise serious constitutional questions of prior restraint and vagueness. *See* fn 15 *infra.*

cluded that California's red-light abatement statute does not apply to motion pictures.[12]

We are in accord with decisions applying these abatement statutes only to houses of prostitution.[13] The meaning of the words "lewdness, assignation or prostitution" is clear in light of the history and purpose of these statutes and that meaning cannot properly be expanded by judicial construction.[14]

---

[12] "The Red Light Abatement Law, originally enacted to make houses of prostitution a private as well as public nuisance, was amended in 1969 to include premises used for illegal gambling. The Red Light Abatement Law has been held by judicial construction to apply to *lewd live stage shows and exhibitions. It has not been similarly extended to apply to depictions in closed theatres of those same acts, by still or motion picture, or drawings or any type of exhibits which are limited to closed theatres.* If the Legislature had desired or intended by section 11225 of the Penal Code to regulate the showing of pornographic films, pictures or drawings, such subject matter could have been included in section 11225 when it was recently amended in 1969, as it did when it chose to enumerate 'illegal gambling as defined by state law or local ordinance' in that section of the Penal Code." (Emphasis supplied.) *Harmer v Tonylyn Productions, Inc,* 23 Cal App 3d 941; 100 Cal Rptr 576, 577 (1972).

[13] In *Chicago v Geraci,* 30 Ill App 3d 699, 703; 332 NE2d 487, 491 (1975), an Illinois appellate court held that "masturbatory massage parlors" are "specialized houses of prostitution" and thus fall within the proscription of the Illinois act. The court found "no essential inconsistency with the holding of the court in *People v Goldman,* 7 Ill App 3d 253; 287 NW2d 177 (1972)," and said:

"However, we find no confusion in the meaning of these terms. Although *traditionally the term 'lewdness' is viewed as being broader than and including the term 'prostitution,' (People v Lackaye,* 348 Ill App 542; 109 NE2d 390 [1952]; opinion adopted by Illinois Supreme Court, 1 Ill 2d 618; 116 NE2d 359 [1953].) such terms refer to *the same general class of activities* which are normally associated with houses of prostitution (or whatever such establishments may be called). They are intended to designate and prohibit sex acts of whatever nature which are performed for money." (Emphasis supplied.)

*Cf. People ex rel Hicks v Sarong Gals,* 27 Cal App 3d 46; 103 Cal Rptr 414 (1972).

[14] Our conclusion that the statute cannot be used to enjoin a motion picture theatre as a nuisance eliminates defendants' vagueness challenge and makes it unnecessary to consider whether the term "lewdness" is synonymous with "obscenity" and meets the standards of *Miller v California, supra.*

II

Our disposition of this case makes it unnecessary to reach First Amendment questions that would be raised by the closing of a theatre as a nuisance for showing films found to be obscene, thereby precluding the showing of other films not found to be obscene.[15]

The Court of Appeals is reversed.

---

[15] The judge ordered nuisance abatement remedies including the closing of the theatres for one year and sale of the furniture, fixtures and contents, thereby precluding the showing of any films during the penalty period. The Court of Appeals modified the order to phrase it "in terms of perpetually enjoining the nuisances here found to exist, the showing of these particular films". *State ex rel Wayne Prosecutor v Diversified Theatrical Corp,* 59 Mich App 223, 242; 229 NW2d 389 (1975).

Several state courts, reviewing the use of statutes (other than red light abatement acts) to enjoin the sale of books or exhibition of films found to be obscene, have found injunctive remedies unconstitutional when used to suppress materials not found to be obscene.

In *Sanders v State,* 231 Ga 608, 613; 203 SE2d 153, 157 (1974), the Georgia Supreme Court declared:

"One obscene book on the premises of a book store does not make an entire store obscene. The injunction closing this store and padlocking it as a public nuisance necessarily halted the future sale and distribution of other printed material which may not be obscene, thereby precluding the application of the above procedural safeguards and creating an unconstitutional restraint upon appellant. This broad result cannot be reconciled with free expression under our Constitutions."

Similarly, see *Mitchem v State ex rel Schaub,* 250 So 2d 883 (Fla, 1971); *State ex rel Field v Hess,* 540 P2d 1165 (Okla, 1975).

While the United States Supreme Court has held that obscene material is outside the protection of the First Amendment *(Miller v California, supra),* the Court has developed procedures to safeguard films and publications against prior restraint including notice to the exhibitor or seller as to what material the government seeks to suppress and prompt judicial determination of the obscenity issue. *Bantam Books, Inc v Sullivan,* 372 US 58; 83 S Ct 631; 9 L Ed 2d 584 (1963); *A Quantity of Books v Kansas,* 378 US 205; 84 S Ct 1723; 12 L Ed 2d 809 (1964); *Freedman v Maryland,* 380 US 51; 85 S Ct 734; 13 L Ed 2d 649 (1965); *Tietel Film Corp v Cusack,* 390 US 139; 88 S Ct 754; 19 L Ed 2d 966 (1968); *Blount v Rizzi,* 400 US 410; 91 S Ct 423; 27 L Ed 2d 498 (1971).

Kavanagh, C. J., and Williams, Coleman, Fitz-gerald, and Lindemer, JJ., concurred with Levin, J.

Ryan, J., took no part in the decision of this case.