Jerome **COHEN, etc., Plaintiff,**

v.

**The CITY OF DALEVILLE, ALABAMA, etc., et al., Defendants.**

Civ. A. No. 87–T–914–S.

United States District Court, M.D. Alabama, S.D.

Aug. 4, 1988.

Kenneth Shinbaum, McPhillips, DeBardelaben & Hawthorne, Montgomery, Ala., for plaintiff.

Henry B. Steagall, III, William Filmore, Steagall & Filmore, Ozark, Ala., and Joseph C. Espy, III, Michael Jackson, Melton & Espy, Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Jerome Cohen, a public purveyor of sexually explicit videotapes in Daleville, Alabama, has brought this lawsuit under 42 U.S.C.A. § 1983, charging that the city's recent decision to revoke his business license constitutes a 'prior restraint,' in violation of the first amendment to the United States Constitution. Cohen has sued the City of Daleville, its mayor, and the members of its city council. Based on evidence presented at a nonjury trial, the court concludes that the city's decision constitutes an impermissible prior restraint and that Cohen is therefore entitled to appropriate relief.

### I.

Jerome Cohen, doing business as "Video World" and "Daleville Thrift and Pawn," sells and rents videotapes, ranging from children's and family films to sexually explicit 'adult' ones. His trouble with the law began in 1981, when he was convicted of distributing obscene literature. Later, in 1985, Cohen was caught with more allegedly obscene literature, but he disposed of the materials after the chief of police ordered him to do so.

Most recently, in February 1987, Cohen was arrested a second time for distributing obscene works. The authorities confiscated numerous sexually explicit videotapes and one "rubber simulated vagina." The seized films were behind the counter, where they were out of public view, but the cardboard packages in which they came

were on display for patrons to observe. It was clear that the videotapes had been rented out to customers. The artificial vagina was found in a cabinet behind a desk in the corner of the store. The authorities found no proof that the artificial vagina had been used for commercial purposes.

On June 9, 1987, Cohen pleaded guilty to displaying, selling and distributing obscene videotapes. The charge was a misdemeanor, and he paid a $1000.00 fine. He was never charged with any offense for possessing the artificial vagina. Cohen's problems did not end, however. Two months later, on August 4, the Daleville City Council notified Cohen that it was going to conduct a public hearing with respect to the issue of revoking his business license.[1]

At the hearing, conducted on August 18, the city's attorney presented evidence recounting the events leading up to Cohen's arrest and conviction. The attorney also presented, and the city council viewed, selected samples from the sexually explicit videotapes the police seized from Cohen's business.[2] Cohen, however, rejected the city's offer to put on evidence. His attorney simply stated to the council members that, if they decided to revoke Cohen's license, their actions would constitute an im-

permissible prior restraint, and that Cohen would most certainly challenge their decision and seek damages in a court of law.

A week later, on August 25, the city council issued a statement finding that Cohen had conducted his business both immorally and illegally, and ordering that Cohen's business license be revoked for 90 days, at which time Cohen could reapply for his license. More specifically, the council found that Cohen had conducted his business in a manner "detrimental to the public morals," so as "to constitute a nuisance"; the council also found that he had operated his business "in an illegal manner as evidenced by [his] ... plea of guilt ... to criminal charges arising from [his] activities on [his] Business premises." The council indicated that the revocation would not take effect until September 15, 1987, and would be stayed pending final resolution of any lawsuit should Cohen seek judicial review before that date.

On September 14 Cohen filed this action for injunctive and other relief, and thereby stayed the effective date of the revocation. He complained that the city's action was an unconstitutional prior restraint on his freedom of speech.[3] The city denies that its

1. The city council issued the notice pursuant to Daleville City Code § 6–15, which provides in part:

   The following procedure shall govern the manner in which any license shall be revoked:

   (1) The city council shall, on its own initiative or upon the oral or written complaint of one or more persons that any licensee in the city or within the police jurisdiction thereof, is operating any exhibition, trade, business, vocation, occupation, or profession in an illegal manner or in such a manner as to be detrimental to public morals or health, or so as to constitute a nuisance, give at least five (5) days' notice in writing to be served on such licensee, or an agent or officer thereof, requiring such licensee to appear before the council at a time and place specified in the notice for the purpose of showing cause, if any, why the license of such licensee should not be revoked. The notice shall specify the grounds upon which such revocation is proposed.

   (2) At the hearing provided for in subsection (1), such licensee shall have the right to introduce witnesses and evidence in his behalf; and the council shall hear all witnesses

and evidence in support of the revocation of such license.

   (3) If, after the hearing, a majority of the council shall be of the opinion that such licensee is operating or has within (6) six months operated such exhibition, trade, business, vocation, occupation or profession in an illegal manner or in such a manner as to be detrimental to public morals or health, or as to constitute a nuisance, then by resolution the council shall forthwith revoke the license of such licensee. No refund of any revoked license shall be made.

2. The films viewed by the city council included "Tickled Pink," "Hot Shots, Vol. II," "Wet, Wild & Wicked," and "Kingsize."

3. Cohen also challenges the city council's interpretation of § 6–15(3)'s six-month statute of limitations, but Cohen's interpretation is unreasonable. *See* note 1, *supra*. If the six-month period ran backward from the hearing date, as Cohen contends, instead of the date of the complaint, then the council would have been forced to act hastily or take no action at all. The council's interpretation, that the filing of a complaint tolls the running of the six-month period,

action constitutes a prior restraint, contending instead that it lawfully punished Cohen for past criminal conduct.

## II.

The doctrine of prior restraint provides, in general, that, except in very limited and specific circumstances, the government may not restrain a particular expression prior to its dissemination even though the expression may be obscene or otherwise be not constitutionally protected and thus subject to punishment after dissemination. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Near v. Minnesota, ex rel. Olson,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The theory behind this doctrine is "deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." *Southeastern Promotions, Ltd.,* 420 U.S. at 559, 95 S.Ct. at 1246–47 (emphasis in original). The parties agree that none of the limited circumstances is present here and that this case thus turns on the narrow issue of whether the Daleville City Council's action constitutes a prior restraint.

## A.

■ As a preliminary matter, the court rejects the City of Daleville's contention that abstention is appropriate in this case. Abstention remains the "exception rather than the rule," particularly in first amendment cases. *City of Houston v.*

*Hill,* —— U.S. ——, –-—, 107 S.Ct. 2502, 2512–13, 96 L.Ed.2d 398 (1987). This case does not fall within any recognized exception. Abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is not appropriate because state judicial proceedings are not pending. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 237–39, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432–34, 102 S.Ct. 2515, 2521–22, 73 L.Ed.2d 116 (1982); *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 112–13, 102 S.Ct. 177, 184–85, 70 L.Ed.2d 271 (1981). Abstention under *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is not appropriate because this case does not raise any difficult unsettled questions of state law. *Hawaii Housing Authority,* 467 U.S. at 236, 104 S.Ct. at 2327. The few questions of state law that this case raises are relatively straightforward and well-settled.

## B.

■ Abandoning the abatement rationale for its action, Daleville wisely concedes that the revocation of Cohen's business license to prevent future sales of obscene videotapes would be a prior restraint. Defendants' Memorandum of Law at 3. It is well established, at least in the Eleventh Circuit, that adult bookstores, theatres and video shops sell presumptively protected materials, such that past sales of obscene materials cannot justify revocation of their licenses to do business in the future. *See Gayety Theatres, Inc. v. City of Miami,* 719 F.2d 1550 (11th Cir.1983).[4]

The city contends, however, that the first amendment allows it to revoke Cohen's license to *punish* him for his commission of a criminal offense. In support of its posi-

---

follows the general understanding of statutes of limitations. *See* 21 Am.Jur.2d *Criminal Law* § 230 (1981) (commencement of proceedings tolls the running of the statute of limitations); 51 Am.Jur.2d *Limitation of Actions* § 200 (1970) (same).

**4.** *See also Universal Amusement Co. v. Vance,* 587 F.2d 159 (5th Cir.1978) (en banc), *aff'd,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *Bayside Enterprises, Inc. v. Carson,* 470 F.Supp. 1140 (M.D.Fla.1979); *General Corp. v. State ex rel. Sweeton,* 294 Ala. 657, 320 So.2d 668 (Ala. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976).

tion, the city observes that lengthy prison terms, substantial fines, and year-long obstructions to the operation of adult entertainment businesses have been upheld as punishments for the violation of obscenity laws.[5] The city reasons that the revocation of Cohen's license for three months is a comparatively mild punishment, and that the suppression of presumptively protected materials is merely an incidental effect of the punishment.

In so rationalizing its action, the city attempts to take advantage of a major theoretical weakness inherent to the prior restraint doctrine: the somewhat incoherent distinction between prior restraints and subsequent punishments. First, punishment is *intended* to deter further expression; and, second, punishment may have the *effect* of incapacitating the speaker, at least temporarily, from further expression. The restraining impact of 'subsequent' punishment, therefore, may and often does equal or exceed that associated with 'prior' restraints. *See* M. Redish, The Proper Role of the Prior Restraint Doctrine in First Amendment Theory, 70 Va.L.Rev. 53 (1984); J. Jeffries, Rethinking Prior Restraint, 92 Yale L.J. 409 (1983); H. Kalven, The Supreme Court: 1970 Term—Foreword: Even When a Nation is at War—, 85

Harv.L.Rev. 3, 33–34 & n. 156 (1971); T. Emerson, The Doctrine of Prior Restraint, 20 Law & Contemp.Probs. 648 (1955).

■ The city has not succeeded, however. The court is convinced, and so finds factually, that the City of Daleville revoked Cohen's license to prevent future sales of sexually explicit videotapes, and not for the purpose of punishing him for having committed an illegal or immoral act at his store. First of all, it is apparent from the face of the city's ordinance that it was not intended as a means to punish: nothing in the language of the ordinance evidences such an intent, as the ordinance has no provisions, explicit or implicit, for sentencing. The ordinance, in simple and direct terms, authorizes the city to put out of business those businesses used for illegal or immoral purposes. Secondly, the city council's proceedings evidenced deep concern for the need to halt the immoral and illegal activity on Cohen's business premises. At no point during the proceedings did the city or its attorney express a need to punish Cohen personally, nor did they question the adequacy of the punishment Cohen received as a result of his guilty plea. The city's hearing was not a sentencing proceeding.[6] Moreover, the city could not re-

---

5. *See Ginzburg v. United States,* 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) (five years' imprisonment); *511 Detroit Street, Inc. v. Kelley,* 807 F.2d 1293 (6th Cir.1986) (fines large enough to impair operation of bookstores held constitutional), *cert. denied,* —— U.S. ——, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987); *City of Paducah v. Investment Entertainment, Inc.,* 791 F.2d 463 (6th Cir.) (civil fines based on profits from obscene materials are permissible punishments for the violation of narrowly structured nuisance and abatement laws), *cert. denied,* 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 290 (1986); *Polykoff v. Collins,* 596 F.Supp. 584 (D.Ariz.1984) (criminal fines imposed by judges for punishment are constitutional), *aff'd,* 816 F.2d 1326 (9th Cir. 1987); *State ex rel. Kidwell v. United States Marketing, Inc.,* 102 Idaho 451, 631 P.2d 622 (1981) (one-year forfeiture of use of bookstore upheld as a punishment), *appeal dismissed sub nom. United States Marketing, Inc. v. Idaho,* 455 U.S. 1009, 102 S.Ct. 1649, 71 L.Ed.2d 878 (1982); *State ex rel. Cahalan v. Diversified Theatrical Corp.,* 59 Mich.App. 223, 229 N.W.2d 389 (1975) (one-year closure of adult theatre for purpose of punishment upheld), *rev'd on other grounds,* 396 Mich. 244, 240 N.W.2d 460 (1976).

6. Indeed, there is a question as to whether a city council, as opposed to a court of law, has the authority to punish anyone for having committed a state criminal offense or violated a city ordinance. Moreover, to the extent that the city may, through its own courts, punish someone for violating a city ordinance, that power is extremely limited. *See* 1975 Ala.Code § 11–45–9(b) (Supp.1987) (penalty for the violation of municipal ordinances may not exceed $500 and six months imprisonment); *City of Birmingham v. Stephens & Kerr,* 167 Ala. 666, 52 So. 590 (1910) (city had authority under state law only to impose fines and imprisonment and thus lacked the authority to destroy liquor belonging to those convicted of violating the prohibition law); *Williamson v. City of Greenville,* 39 Ala.App. 237, 97 So.2d 600 (Ala.App.1957) (fine levied by city exceeded amount authorized by state law).

Furthermore, even if the Daleville City Council had the authority to punish Cohen for a criminal offense, serious questions would be raised as to whether Cohen was afforded that full panoply of rights that must precede and attend a criminal punishment, including the right not to be subjected to double jeopardy.

fer this court to another instance in which it has expressly punished a businessman; nor could the city refer to an expressed and adopted policy of punishing businessmen who act immorally or illegally. The evidence is clear to the court that the city sought with its order of revocation, not to punish Cohen, but solely to bring to an end his immoral and illegal activity, evidenced by his own guilty plea.[7]

### III.

In conclusion, as the City of Daleville primarily intended to restrain Cohen's exercise of first amendment rights, and not merely to punish Cohen for previous violations of criminal laws, the city's attempt to repackage its prior restraint as a subsequent punishment must fail. The court will therefore enjoin the city and its officials from enforcing its order revoking Cohen's business license. The court will also award attorney fees and costs to Cohen.

An appropriate judgment will be entered.

### JUDGMENT AND INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT and DECREE of the court:

(1) That judgment be and it is hereby entered in favor of plaintiff Jerome Cohen and against defendants City of Daleville, Alabama, Gene L. Hughes, as mayor of the City of Daleville, and Jamie Price, Fred Farmer, Lynn Reeves, Gerald Fontaine and George Caldwell, as members of the Daleville City Council;

(2) That all defendants, their officers, agents, servants, and employees, and those persons in active concert or participation with them who receive actual notice of this judgment and injunction by personal service or otherwise, be and they are each hereby permanently ENJOINED and RESTRAINED from enforcing the City of Daleville's order dated August 25, 1987, revoking the business license of plaintiff Cohen;

(3) That plaintiff Cohen be and he is hereby allowed until August 29, 1988, to file his request for attorney fees and expenses; and

(4) That costs be and they are hereby taxed against all defendants, for which execution may issue.

The clerk of the court is DIRECTED to issue a writ of injunction.

---

7. Relying on *Arcara v. Cloud Books, Inc.,* 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986), the city council also contends that it could revoke Cohen's license to punish him for having a "rubber simulated vagina" in his store. Assuming that the city council has the power to punish, *see* note 6, *supra,* its argument lacks merit. In *Arcara,* the trial court found that the adult bookstore had become a scene for prostitution and other public sex acts. *Id.* at 698, 106 S.Ct. at 3173. The trial court closed the bookstore because these sex acts violated a narrowly tailored nuisance provision in New York's public health law. *Id.* at 699, 106 S.Ct. at 3174. There was, moreover, no evidence that the public health law was being used as a pretext to suppress obscenity. *Id.* at 707, n. 4, 106 S.Ct. at 3178 n. 4.

In the present case, in contrast to *Arcara,* no court has found that the mere presence of the "rubber simulated vagina" in the cabinet behind the desk in the corner of the store was illegal. No court could, moreover, as the mere possession of artificial vaginas, artificial penises and similar sexual aids is protected by the right to privacy. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *but see Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (some types of private sexual activity are not protected by the right to privacy). Also in contrast to *Arcara,* the broad wording of the nuisance provision here did not put Cohen on notice that he could be punished for the mere possession of an artificial vagina. In any event, the court is convinced that the city is now using Cohen's possession of the artificial vagina as a pretext to suppress the videotapes.