**T BACKS CLUB, INC.,
et al., Plaintiffs,**

v.

**Jimmy SEATON, et al., Defendants.**

**No. Civ.A. 99–D–1140–S.**

United States District Court,
M.D. Alabama,
Southern Division.

Jan. 5, 2000.

J. David Robinson, Daleville, AL, for plaintiff.

Henry B. Steagall, III, Ozark, AL, for defendant.

### *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is Plaintiffs' Motion To Reconsider Denial Of Preliminary Injunction ("Mot.") and Plaintiffs' Memorandum Brief In Support Of Motion To Reconsider Denial Of Preliminary Injunction ("Pl.s' Br."), both filed November 5, 1999. On November 17, 1999, Defendants filed a Brief In Opposition To Plaintiffs' Motion To Reconsider ("Def.s' Br."). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Plaintiffs' Motion is due to be denied.

## JURISDICTION

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the Constitution of the United States. Additionally, the court has original subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1343(a)(3) because this is an action to redress the alleged deprivation of federal constitutional rights under color of state statute and city ordinance. The Parties do not contest personal jurisdiction or venue.

## PRELIMINARY INJUNCTION STANDARD

■ A district court may grant injunctive relief if the movant shows the following: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs the threatened harm the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998) (citing *All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc.,* 887 F.2d 1535, 1537 (11th Cir.1989). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion' as to the [aforementioned] four requisites." *McDonald's Corp.,* 147 F.3d at 1306 (citations omitted); *see also Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir.1994) ("The district court 'must exercise its discretion in light of the four prerequisites for extraordinary relief of a preliminary injunction.'") (quoting *Nnadi v. Richter,* 976 F.2d 682, 690 (11th Cir.1992)). "The grant or denial of a preliminary injunction is a decision within the sound discretion of the district court." *Sierra Club v. Georgia Power Co.,* 180 F.3d 1309, 1310 (11th Cir.1999) (citing *United*

*States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Parties have stipulated to the following facts: [1]

1. Plaintiff T–Backs ("T–Backs") is a nightclub/lounge with a Daleville restaurant license and a retail liquor license issued by the State of Alabama. T–Backs is located within the municipal limits of the City of Daleville and is an Alabama corporation which is operated by Plaintiff Paul B. Connolly ("Connolly").

2. Since June 16, 1996, T–Backs operated as a nightclub/lounge that offered erotic dancers wearing G-strings and breast coverings, but without topless or nude dancing, under Daleville business license No. 19990366 which was issued November 2, 1998. The address of the stated business is 794 Highway 84 East, Post Office Box 597, Daleville, Alabama.

3. On June 18, 1999, Connolly, on behalf of T–Backs erected a common wall to divide the nightclub/lounge into two sections. Both sections have separate addresses, and entrances. Connolly continued the operation of T–Backs with the sale of food and alcohol, but named the new section "Fantasies" and discontinued the sale of alcohol therein. Connolly then obtained a separate address (through E911 director Major Goodway) for Fantasies and applied to the City of Daleville for a separate business license.

4. On June 18, 1999, Connolly approached the Administrative Clerk for the City of Daleville and advised her that he was opening a new business named "Fantasies," wherein he would not serve alcohol, but would serve prepackaged food. Connolly signed an application for T–Backs Club, Inc., D.B.A. Fantasies. Based on this discussion, the City issued a restaurant license to Connolly for Fantasies under separate Business License No. 19990561 ("Fantasies' license") on June 21, 1999.

5. Daleville's ordinance requires that a restaurant license application be accompanied by a health permit. At the time of the application for the Fantasies business license, no health department permit was presented to the Administrative Clerk because it was believed by the parties that no permit was necessary because the sale of food was strictly limited to "pre-packaged food." The Administrative Clerk was not informed that topless or nude dancing would take place in Fantasies.

6. After the issuance of the Fantasies business license, topless and totally nude female dancing began being performed. Alcohol continued to be served at T–Backs, but no alcohol was served in Fantasies. Nonalcoholic drinks were mixed, blended and dispensed in Fantasies along with ice, which was scooped from an ice chest.

7. T–Backs customers are allowed to consume alcohol and customarily enter Fantasies through a door in the common wall. Once inside Fantasies, the customer is allowed to view topless and nude dancing for an entry fee. For an additional fee, a customer can enter a small alcove room where a "private dance" can be had by a totally nude dancer.

8. Although Fantasies has a separate outside entrance, an exterior sign on the door states that customers should "enter through T–Backs."

---

1. On October 25, 1999, the Parties submitted a Joint Stipulation of Facts ("Jt.Stip. of Facts"). The court has made minor grammatical changes therein, but nothing of substance has been altered.

Fantasies has lighted neon beer signs on the window.

9. Connolly pays 3% gross receipts tax to the State Department of Revenue, which is then paid to the City of Daleville. Connolly is responsible for reporting his true and accurate gross receipts to the State Department of Revenue each month. His report is made for the T–Backs Corporation which also includes the revenues of Fantasies. For the month of July 1999, Connolly reported $3,363 as gross receipts for T–Backs and Fantasies combined. Connolly acknowledges in his affidavit filed with this court that he actually brought in $4,035 from door revenues from 807 customers just on Fantasies alone in the month of July, 1999.

10. On August 10, 1999, after conducting an investigation of Fantasies, the City of Daleville police obtained warrants and arrested Connolly for violating § 13A–12–200.11 of the Alabama Code, which prohibits totally nude dancing. Also, three dancers at Fantasies were arrested on criminal charges for public lewdness, in violation of Alabama Code § 13A–12–130. Plaintiffs filed a Motion to Stay Prosecution of Connolly in the Dale County District Court. The case was transferred to the Circuit Court of Dale County and Judge P.B. McLauchlin issued the Stay.

11. On September 30, 1999, the Daleville City Council, at a special meeting, issued a notice of proposed revocation of the Fantasies Business License No. 19990561. Connolly's attorney accepted service of the written notice at the Council meeting.

12. On October 14, 1999, a public due process hearing was held before the Daleville City Council with Connolly and his attorney present who cross examined the witnesses, introduced a document and presented arguments to the Council. Connolly did not testify or call any witnesses.

At the hearing, the following witnesses testified in favor of revocation:

A. *Administrative Clerk who issued the business license to Fantasies:* She testified that Connolly had requested a "coffee shop" license and represented that he would serve "pre-packaged food." Connolly did not present a health department permit and did not reveal that topless or nude dancing would be conducted at Fantasies. The Administrative Clerk further testified that Connolly had stated that he did not need a restaurant license because he would only dispense prepackaged food, but a restaurant license was the only thing available for a coffee shop.

B. *Inspector for the Department of Health:* He testified that he had inspected Connolly's building, but had not been made aware that T–Backs considered Fantasies as a separate business. He testified that any business that dispenses, mixes, or blends drinks, or dispenses ice with a scoop, must have a health permit. Therefore, Fantasies should have had a "limited restaurant" health permit. Consequently, the operation of Fantasies without such a permit violated State law. He also testified that Fantasies does not have a double sink, appropriate floors and walls, and other requirements, and could not be approved for a health permit at that time. He also stated that he had seen the signs for Fantasies inside T–Backs, but did not realize Connolly operated two businesses from that structure. He stated that he customarily allows businesses to continue to operate for a short period of time until they comply.

C. *Police investigator:* He testified about the layout of the building, the nude dancing and intimate physical contact between the dancers and customers. He witnessed a totally nude dancer on stage place her legs over the shoulders of a customer and then thrust her crotch closely up to the face of the customer.

D. *Police Chief:* He testified that the common wall is just a sham to get around Daleville's ordinance prohibiting alcohol and nude dancing in the same place. He testified that no prepackaged food was found on the Fantasies premises upon several inspections by City and State investigators and police. He identified photos of the signs on the door and windows of Fantasies. Next, he testified about customers who were provided alcohol and then would merely step through the partition door to view a dance and then return to drinking in the bar. He further testified that Connolly reported gross receipts to the Department of Revenue in the amount of $3,363 for July, 1999. However, the Police Chief then described how an affidavit submitted by Plaintiffs in this case showed that in fact Connolly had collected receipts in July, 1999, of $4,035 from door revenues from Fantasies alone, which constitutes falsifying revenue reports on Plaintiffs' business. The Police Chief stated that several businesses in Daleville had problems with taxes before, but he did not recall any license revocations for this reason during his term as Chief of Police (3 years). He stated that prior to the Notice of Revocation, Connolly had not been served with notice of tax violations, but the Chief stated that he was not aware of the tax violations until after he saw Connolly's affidavit submitted in the instant case. He further stated that to the best of his knowledge, every lounge, nightclub, and convenience store in Daleville that dispenses food or ice (other than prepackaged food) has a restaurant license. He stated that Daleville is a military town and his training and experience as a policeman and a military policeman from other places and towns, indicated that the conduct and activities at Fantasies will lead to potential violence, assaults on women, disease, prostitution, and other criminal acts although he was not able to identify any specific complaints with respect to that type of activity at Connolly's business. He testified that these activities are against the public health and morals; the procurement of a license under false pretenses violates Alabama Code § 40–12–8; the combination of nude dancing and alcohol in the same structure violates Daleville Code § 3–27; the under reporting of gross receipts violates Daleville Code § 6–9; the failure to obtain a health permit for Fantasies violates Daleville Code § 6–10; allowing intimate physical contact between nude dancers and customers is a nuisance and against public health and morals. He requested the Council revoke the business license of Fantasies.

13. At the close of the evidence, the Council and Mayor voted unanimously to revoke the Fantasies Business License No. 19990561 pursuant to Daleville Code §§ 6–14 and 6–15. The license of T–Backs (No. 19990366) is not affected and T–Backs can return to its former operation.

(Jt.Stip. Of Facts, Def.s' Ex. 1.)

After the October 14, 1999 public due process hearing, Plaintiffs closed Fantasies. On October 21, 1999, Plaintiffs filed with this court a Motion For Temporary Restraining Order And Preliminary Injunction ("Mot. For Inj. Relief"). In said Motion, Plaintiffs requested that "the De-

fendants be temporarily restrained from the following activities":

A. enforcing the Revocation Order of the Daleville City Council issued October 14, 1999, against Fantasies.

B. interfering with the Plaintiffs' business.

C. harassing the Plaintiff, his Customers, or Entertainers.

(Mot. For Inj. Relief at 5.) In support of their Motion For Injunctive Relief, Plaintiffs vaguely set forth the following arguments: (1) denial of Plaintiffs' right of freedom of speech; (2) lack of adequate procedural safeguards within Daleville's revocation ordinance; and (3) violation of Plaintiffs' due process rights. (*Id.* at 2–4.) Additionally, Plaintiffs made cursory reference to their original Complaint, wherein they challenge the constitutionality of the following Alabama statutes: (1) Alabama Code § 13A–12–200.5(4); (2) Alabama Code § 13A–12–200.11; and (3) Alabama Code § 13A–12–200.12. (Compl. at 8–9.)

On October 21, 1999, the court conducted a conference call wherein counsel for Plaintiffs and Defendants agreed that the revocation of Plaintiffs' business license would not be enforced before a hearing on Plaintiffs' Motion For Injunctive Relief was held. Based upon this agreement, the court denied as moot Plaintiffs' Motion For Temporary Restraining Order and scheduled a hearing on Plaintiffs' Motion For Preliminary Injunction and/or Hearing On The Merits. The court invited each Party to submit a brief prior to said hearing, but only Defendants responded by submitting a Preliminary Brief ("Def.s' Prelim. Br.") on October 25, 1999.

On October 26, 1999, the court conducted a Preliminary Injunction Hearing and/or Hearing On The Merits wherein Plaintiffs and Defendants argued and presented evidence regarding Plaintiffs' Motion For Preliminary Injunction. *See* Appendix A (Transcript of October 26, 1999 Preliminary Injunction Hearing and/or Hearing On The Merits.) After hearing all of the evidence, the court found that Plaintiffs had not established a substantial

likelihood of success on the merits. (*Id.* at 62–69.) Accordingly, based on the reasons set forth by the court at the conclusion of the Preliminary Injunction Hearing, the court entered an Order on October 28, 1999 denying Plaintiffs' Motion For Preliminary Injunction. In the same Order, the court, upon Plaintiffs' request, set forth a briefing schedule regarding the instant Motion To Reconsider. Having received briefs from Plaintiffs and Defendants, the court now considers Plaintiffs' Motion To Reconsider Denial Of Preliminary Injunction.

## DISCUSSION

At the outset, the court notes that the Parties have made the court's task extremely difficult. Plaintiffs' claims have been poorly pleaded, poorly briefed, and were poorly argued at the Preliminary Injunction Hearing, making it arduous to ascertain the theories of their case. Moreover, while the court recognizes that Plaintiffs' pleadings complicated Defendants' ability to know the precise grounds upon which to base their defense, Defendants' arguments have nonetheless been cursory and general. However, the court herein attempts to construe and examine Plaintiffs' claims in an effort to determine whether Plaintiffs are entitled to preliminary injunctive relief.

## I. Constitutional Challenges To State Statutes

The court begins its analysis by examining the claims set forth in Plaintiffs' Complaint, filed September 24, 1999. In their Complaint, Plaintiffs seek declaratory and injunctive relief "pursuant to 42 U.S.C. Section[s] 1983 and 1988 based on the continued enforcement of facially unconstitutional statutes recently enacted" by the Alabama legislature. (Compl. at 1.) Specifically, Plaintiffs challenge the facial validity of the following Alabama criminal statutes: (1) Alabama Code § 13A–12–200.12; (2) Alabama Code § 13A–12–200.11; and (3) Alabama Code § 13A–12–

200.5(4). (Compl. at 4–5.) Based on the reasons set forth herein, the court finds that Plaintiffs have not established a substantial likelihood of succeeding on the merits and, thus, preliminary injunctive relief is not warranted. *See generally Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir.1994) (holding that when a claimant fails to establish a substantial likelihood of success on the merits, a court may properly deny claimant's motion for preliminary injunction without addressing the other three prerequisites of preliminary injunctive relief).

### A. Alabama Code § 13A–12–200.12

Plaintiffs contend that the following provisions of § 13A–12–200.12 are facially invalid because they "violate the First and Fourteenth Amendments to the U.S. Constitution" (Compl. at 5):

(a) Any business establishment that operates as an "adult bookstore," "adult movie house," "adult video store," or other form of adult-only entertainment enterprise shall obtain in addition to any licenses required by existing law a special operating license, except that a video rental store that does not engage predominantly in and whose principle [sic] business is not the sale or rental of adult material, if it is maintained in compliance with Section 13A–12–200.5(2) or is located in an area restricted to adults. Persons who apply for the license shall provide on the application detailed information concerning ownership and financing, and pay an investigation fee of five hundred dollars ($500) to the county or municipality wherein the business establishment will be located.

(b) If granted the license, the local government, in its discretion, may restrict the type of advertisement that the business establishment can display outside the establishment.

(c) The license shall be revoked if the business establishment is convicted of violating this division.

ALA CODE § 13A–12–200.12 (1998 Supp.).

Plaintiffs claim that this statute is facially invalid because it lacks adequate procedural safeguards and places unbridled discretion in the hands of public officials to deny permission to engage in constitutionally protected expression. (Pl.s' Br. at 11.) While Plaintiffs' cursory challenge to § 3A–12–200.12 may have some merit, the court will not entertain said challenge at this stage of the litigation because Plaintiffs have not established or even addressed whether or not they have standing to bring such a claim.

■■■ "Standing is a preliminary jurisdictional matter which a trial court resolves, [sua sponte], without considering the likelihood of success on the merits." *E.F. Hutton v. Hadley*, 901 F.2d 979, 983 (11th Cir.1990); *see also English v. Talladega Co. Bd. of Educ.*, 938 F.Supp. 775, 784 (N.D.Ala.1996) ("Standing is part of the 'case or controversy' jurisdictional requirement of Article III, and this Court has the obligation to examine it sua sponte.") To establish standing, a plaintiff must, at a minimum, show that he or she has suffered a concrete and particularized injury, resulting from the action challenged, that is likely to be redressable in a judicial action. *See Alabama v. United States Envtl. Protection Agency*, 871 F.2d 1548, 1554 (11th Cir.1989) (citing *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that the plaintiff bears burden of establishing standing). If the standing requirements are not met, a federal court is precluded from exercising jurisdiction over the matter before it. *See Alabama*, 871 F.2d at 1554 ("Standing is a jurisdictional prerequisite to suit in federal court.") (citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 475–76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). Because of the fundamental doctrine of separation of powers, standing inquiries must be "especially rigorous" when, as here, the

court is asked to determine the constitutionality of a legislative enactment. *Raines v. Byrd,* 521 U.S. 811, 819–20, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). These well-established standing requirements "reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick v. Oklahoma,* 413 U.S. 601, 610–11, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

 As noted earlier, neither Plaintiffs nor Defendants have even broached the issue of whether Plaintiffs have standing to challenge § 13A–12–200.12. However, the court finds, sua sponte, that Plaintiffs have not met the traditional standing requirements, set forth above, as to their § 13A–12–200.12 claim because Plaintiffs have failed to show or even allege any relationship between the challenged statute and their claimed injury. Indeed the only concrete injury that Plaintiffs clearly allege is the revocation of the Fantasies' license.[2] Plaintiffs fail to establish any causal relationship whatsoever between the enforcement of § 13A–12–200.12 and the revocation of the Fantasies' license. In other words, Plaintiffs do not show that their alleged injury resulted from the challenged statute. Consequently, Plaintiffs fail to establish that a judicial action concerning § 13A–12–200.12 would likely redress their alleged injury. Accordingly, the court finds that Plaintiffs have not met the traditional requirements of standing.

 However, the United States Supreme Court has established a very limited exception to the traditional standing requirements in the context of "First Amendment challenges to statutes based on First Amendment overbreadth." *Los Angeles Police Dep't. v. United Reporting Publ'g Corp.,* No. 98–678, 120 S.Ct. 483, 1999 WL 1100446, *4 (U.S. December 7, 1999). This narrow exception, known as the overbreadth doctrine, allows a plaintiff to circumvent traditional standing requirements when facially attacking a statute on First Amendment overbreadth grounds " 'because persons whose expression is constitutionally protected may well refrain from exercising their right for fear of criminal sanctions provided by a statute susceptible of application to protected expression.' " *See id.* at *4–5 (quoting *Gooding v. Wilson,* 405 U.S. 518, 520–21, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972)). In other words, because of the significant concerns associated with the wrongful proscription of constitutionally protected speech, the overbreadth doctrine permits a plaintiff, in certain circumstances, to facially challenge an overly broad statute that restricts protected speech, even though the challenged statute has not been unconstitutionally applied to said plaintiff.

Nevertheless, even assuming that Plaintiffs' facial attack of § 13A–12–200.12 is based on First Amendment overbreadth, which is not readily apparent from the pleadings, the court remains unpersuaded that Plaintiffs are entitled to bring this claim because the overbreadth doctrine is "strong medicine" that is to be employed "with hesitation and then only as a last resort." *Id.* at *5 (citing *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908). Furthermore, the overbreadth doctrine's "application becomes more unlikely as the allegedly chilled expression 'moves from pure speech toward conduct and that conduct— even if expressive—falls within the scope of otherwise valid criminal laws.' " *Geaneas v. Willets,* 911 F.2d 579, 586 (11th Cir.1990) (quoting *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908). Here, the allegedly chilled expression is nude dancing, which rests "at a pronounced distance from the 'pure speech' at the First Amendment's core...." *Geaneas,* 911 F.2d at 586; *see*

---

**2.** To have standing, a plaintiff must show that he or she has suffered "an invasion of a legally protected interest which is ... concrete and particularized." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. In this case, the only concrete and particularized injuries that Plaintiffs allege relate to the revocation of the Fantasies' license and the loss of revenue caused by said revocation. Plaintiffs' vague claims concerning the alleged infringement upon their First Amendment rights will be addressed subsequently in this opinion.

*also Barnes v. Glen Theatre,* 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (holding that nude dancing involves only the barest minimum of protected expression under the "outer perimeters of the First Amendment"). Therefore, it is doubtful that Plaintiffs can utilize the overbreadth doctrine to overcome their lack of standing to challenge § 13A–12–200.12.

In any event, Plaintiffs fail to even address the issue of whether they have standing to challenge § 13A–12–200.12, much less the issue of whether the overbreadth doctrine is applicable. Thus, the court is extremely hesitant to find that Plaintiffs have a substantial likelihood of succeeding on the merits of this challenge when it is unclear whether Plaintiffs are even entitled to bring said challenge. Moreover, " 'preliminary injunctions of legislative enactments ... must be granted reluctantly and only upon a clear showing that the injunction ... is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts.' " *Church v. City of Huntsville,* 30 F.3d 1332, 1342 (11th Cir. 1994) (quoting *Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990)). Because Plaintiffs have failed to establish standing to challenge § 13A–12–200.12, the court finds that Plaintiffs have not made a clear showing that an injunction is definitely demanded by the Constitution. Therefore, based on the foregoing, the court finds that preliminary injunctive relief is not appropriate regarding Plaintiffs' challenge to § 13A–12–200.12.

**B. Alabama Code § 13A–12–200.11**

■ Next, Plaintiffs challenge the constitutionality of the following provisions of § 13A–12–200.11, claiming that said provisions impose "a content-based restriction on protected expression in violation of the First Amendment to the U.S. Constitution made applicable to Alabama through the Fourteenth Amendment" (Compl. at 4):

It shall be unlawful for any business establishment or any private club to show or allow to be shown for entertainment purposes the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state. A violation of this section shall be a Class C felony.

ALA CODE § 13A–11–200.11 (1998 Supp.).

The court notes, once again, that Plaintiffs fail to address the issue of whether they have standing to bring this claim. However, assuming, without deciding, that Plaintiffs could establish the requisite standing to challenge § 13A–12–200.11, the court finds that Plaintiffs are unable to establish a substantial likelihood of success on the merits based on the reasoning set forth in *Ranch House v. Amerson,* 22 F.Supp.2d 1296 (N.D.Ala.1998).[3] In *Ranch House,* the owner of an exotic dancing establishment challenged the constitutionality of § 13A–12–200.11 based upon the same grounds that Plaintiffs now assert. *Id.* at 1298. After a detailed constitutional analysis of the contested statute, the *Ranch House* court found that § 13A–12–200.11 passed constitutional "muster." *Id.* at 1299–1310. This court agrees with the decision in *Ranch House* and, thus, based on the reasons set forth in that opinion, the court finds that Plaintiffs fail to show a substantial likelihood of success on the merits of their § 13A–12–200.11 claim. Accordingly, the court finds that preliminary injunctive relief is inappropriate as to this claim.

**3.** The court notes that *Ranch House v. Amerson* is currently on appeal in the Eleventh Circuit.

## C. Alabama Code § 13A–12–200.5(4)

Finally, Plaintiffs challenge the constitutionality of the following provision of § 13A–12–200.5, claiming that said provision "facially violates the First and Fourteenth Amendments to the U.S. Constitution" (Compl. at 4):

> (4) It shall be unlawful for any person to operate an adult bookstore, adult movie house, adult video store, or other form of adult-only enterprise within 1,000 feet of a church, place of worship, church bookstore, public park, public housing project, daycare center, public or private school, college, recreation center, skating rink, video arcade, public swimming pool, private residence, or any other place frequented by minors. Any person who violates this subsection shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not more than ten thousand dollars ($10,000) and may also be imprisoned in the county jail for not more than one year.

ALA CODE § 13A–11–200.5(4) (1998 Supp.).

The court notes that, yet again, Plaintiffs fail to address the issue of whether they have standing to bring this claim. However, assuming, without deciding, that Plaintiffs could establish the requisite standing to challenge § 13A–12–200.5(4), the court finds that Plaintiffs are unable to establish a substantial likelihood of success on the merits because of the reasoning set forth in *Ranch House v. Amerson*, 22 F.Supp.2d 1296 (N.D.Ala.1998). In *Ranch House*, the owner of an exotic dancing establishment challenged the constitutionality of § 13A–12–200.5 based upon the same grounds that Plaintiffs now assert. *Id.* at 1298. After a comprehensive constitutional analysis of the contested statute, the *Ranch House* court found that § 13A–12–200.5, in its entirety, "is facially valid and is not overbroad." *Id.* at 1306–1310. This court, as previously stated, agrees with the decision in *Ranch House* and, thus, based on the reasons set forth in that opinion, the court finds that Plaintiffs fail to show a substantial likelihood of success

on the merits of their § 13A–12–200.5(4) claim. Accordingly, the court finds that preliminary injunctive relief is inappropriate as to this claim.

In sum, Plaintiffs have not demonstrated that they have standing to challenge these state statutes, much less that they have a substantial likelihood of succeeding on the merits of these challenges. Moreover, Plaintiffs have failed to distinguish or even discuss the *Ranch House* opinion, which upholds two of the three statutes that Plaintiffs are challenging. Accordingly, the court finds that preliminary injunctive relief is not warranted as to Plaintiffs' constitutional challenges to the aforementioned state statutes.

## II. Constitutional Challenge To City Ordinance

The court now turns to Plaintiffs' remaining claims concerning § 6–15 of the Daleville City Code ("§ 6–15"), which provides as follows:

> Sec. 6–15. [Revocation]—Procedure.
>
> The following procedure shall govern the manner in which any license shall be revoked:
>
> (1) The city council shall, on its own initiative or upon the oral or written complaint of one or more persons that any licensee in the city or within the police jurisdiction thereof, is operating any exhibition, trade, business, vocation, occupation or profession in an illegal manner or in such a manner as to be detrimental to public morals or health, or so as to constitute a nuisance, give at least five (5) days' notice in writing to be served on such licensee, or an agent or officer thereof, requiring such licensee to appear before the council at a time and place specified in the notice for the purpose of showing cause, if any, why the license should not be revoked. The notice shall specify the grounds upon which such revocation is proposed.
>
> (2) At the hearing provided for in subsection (1), such licensee shall have the

right to introduce witnesses and evidence in his behalf; and the council shall hear all witnesses and evidence in support of the revocation of such license.

(3) If, after the hearing, a majority of the council shall be of the opinion that such license is operating or has within six (6) months operated such exhibition, trade, business, vocation, occupation or profession in an illegal manner or in such a manner as to be detrimental to public morals or health, or as to constitute a nuisance, then by resolution the council shall forthwith revoke the license of such license. No refund of any revoked license shall be made.

(4) If, after receiving such written notice, such licensee, or a duly authorized representative thereof, shall fail to appear before the council at the time and place fixed for the hearing, or to which the same has been continued, then the council shall hear and consider evidence in support of the proposed revocation, and shall have the right to take the action authorized in subsection (3) above. (Ord. No. 7–20–77, Art. I, § 14, 7–20–77).

DALEVILLE, ALA., CODE § 6–15 (1977).

▮▮▮▮▮ Plaintiffs do not mention § 6–15 in their Complaint, but refer to it for the first time in their Motion For Preliminary Injunction. However, for the purposes of the instant Motion, the court will address Plaintiffs' claims as to § 6–15,[4] which are summarized as follows:

**The Ordinance in question is invalid on its face due to its failure to provide judicial access.[5]**

Section 6–15, of the Daleville Code, runs afoul [of] the Eleventh Circuit Court of Appeals' opinion in *Boss Capital v. City of Casselberry*, 187 F.3d 1251 (11th Cir.1999). *Unlike* the City of Cas-

---

**4.** "A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit," *Kaimowitz v. Orlando, Fl.*, 122 F.3d 41, 43 (11th Cir.1997). However, the court will entertain Plaintiffs' challenge to § 6–15 because, like the claims asserted in the Complaint, this challenge is based upon First Amendment grounds and, therefore, is not "wholly outside the issues in the suit." *Id.*

**5.** Plaintiffs primarily contend that § 6–15 is unconstitutional on its face because the ordinance does not explicitly provide for access to prompt judicial review of revocation decisions made by the Daleville City Council. (Pl.s' Br. at 6; App. A at 70.) In support of this contention, Plaintiffs rely on the following cases: (1) *Freedman v. State of Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); (2) *FW/PBS v. City of Dallas*, 493 U.S. 215, 220, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); and (3) *Boss Capital v. City of Casselberry*, 187 F.3d 1251 (11th Cir.1999). However, as discussed infra, Plaintiffs' reliance on these cases is largely misplaced because the aforementioned cases involve laws that specifically regulate protected speech or expression, whereas § 6–15 is a law of general application that regulates conduct, not speech or expression.

Even assuming that *Freedman, FW/PBS,* and *Boss Capital* are applicable to the instant action, Plaintiffs' argument concerning judicial review fails because the Eleventh Circuit has "never squarely held that an explicit judicial review provision is essential [for licensing ordinances]." *Lady J. Lingerie v. City of Jacksonville*, 176 F.3d 1358, 1363 (11th Cir.1999). Indeed, the Eleventh Circuit has stated that "[i]t may be enough that state law provides a general right to judicial review of administrative decisions, [such as licensing and zoning decisions]." *Id.* Furthermore, despite what Plaintiffs would have the court believe, the Eleventh Circuit's recent decision in *Boss Capital* does not require that a licensing ordinance explicitly provide for judicial review of licensing decisions. In fact, the *Boss Capital* court held that "[t]he need for a prompt judicial decision is [ ] less compelling for licensing ordinances [ ] than for censorship ordinances" and thus, *"access* to prompt judicial review is sufficient for licensing decisions." 187 F.3d at 1256 (emphasis added).

In the instant action, it is undisputed that Plaintiffs' had access to judicial review of Defendants' revocation decision via the numerous common law remedial writs available and also through the various Alabama statutory provisions available that allow judicial review of adverse actions taken by a municipality. *See* Def.s' Br. at 12–13. Not to mention the judicial review that this court has provided. Therefore, based on the foregoing, the court is unpersuaded that § 6–15 is unconstitutional simply because it does not explicitly provide for access to judicial review.

selberry's ordinance, the Daleville Revocation Ordinance on its face fails to provide for judicial review or access, and should be unconstitutional [sic] prior restraint [6] and as applied for the following reasons:

a. It fails to maintain the status quo of protected speech;

b. Provides for restraint prior to judicial review or resolution;

c. Gives the City Council unbridled discretion to revoke licensees [sic];

d. Fails to provide judicial access as required.

(Pls' Br. at 6) (emphasis in original.) In short, Plaintiffs contend that § 6–15 impermissibly burdens their First Amendment protected [7] nude dancing activities. (*Id.*)

However, § 6–15 is undisputedly a law of general application that regulates unlawful conduct and is not specifically targeted at any form of protected speech or expression. Therefore, it is highly questionable whether § 6–15 implicates the First Amendment at all. *See Barnes,* 501 U.S. at 576, 111 S.Ct. 2456 (5–4 decision) (Scalia, J., concurring); *see also Arcara v. Cloud Books,* 478 U.S. 697, 707, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986) (holding that the First Amendment is not implicated when the challenged statute is "directed at unlawful conduct having nothing to do with . . . expressive activity"). Indeed, every case relied upon by Plaintiffs in support of their attack on § 6–15 can be distinguished from the instant matter because these cases address laws that specifically regulate forms of protected speech or expression. *See Freedman v. State of Maryland,* 380 U.S. 51, 52, 85 S.Ct. 734, 13 L.Ed.2d

649 (1965) (addressing a First Amendment challenge to Maryland's motion picture censorship statute); *FW/PBS v. City of Dallas,* 493 U.S. 215, 220, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (addressing a First Amendment challenge to "a licensing scheme in a comprehensive city ordinance [specifically] regulating sexually oriented businesses"); *Boss Capital,* 187 F.3d at 1253–54 (addressing First Amendment challenges to a zoning ordinance that specifically regulates adult entertainment establishments and a licensing ordinance that specifically regulates adult entertainment establishments); *4805 Convoy v. City of San Diego,* 183 F.3d 1108, 1111 (9th Cir.1999) (addressing a First Amendment challenge to "the City of San Diego's nude dancing licensing ordinance"); *DLS v. City of Chattanooga,* 894 F.Supp. 1140, 1143 (E.D.Tenn.1995) (addressing a First Amendment challenge to "Chattanooga's adult-oriented establishment ordinance"). In other words, Plaintiffs have failed to make a "clear showing that [an] injunction . . . is definitely demanded by the [First Amendment to the] Constitution." *Church,* 30 F.3d at 1342. Therefore, the court is hesitant to determine the outcome of Plaintiffs' ambiguous constitutional claims when such a determination may not be required. *See Boss Capital,* 187 F.3d at 1254 ("[I]t is our custom not to decide difficult constitutional questions unless we must.") (citing *Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)). Accordingly, the court finds that Plaintiffs have failed to establish a substantial likelihood of success on the merits of their First Amendment challenge to § 6–15 and, thus,

---

**6.** Plaintiffs present this prior restraint argument separately from their general First Amendment challenge to § 6–15. Therefore, *the court will address Plaintiffs' prior restraint argument separately herein.*

**7.** "The First Amendment explicitly protects 'the freedom of speech [and] of the press'—oral and written speech—*not* 'expressive conduct.'" *Barnes,* 501 U.S. at 576, 111 S.Ct. 2456 (5–4 decision) (Scalia, J., concurring)

(emphasis added.) However, the United States Supreme Court has held that "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so." *Id.* at 567, 111 S.Ct. 2456. In other words, the nude dancing that Plaintiffs seek to conduct at Fantasies is a form of expression that garners a limited amount of protection under the First Amendment. *See id.*

preliminary injunctive relief is not warranted.

Separate from their broad First Amendment challenge to § 6–15 discussed above, Plaintiffs also claim that Defendants' action, taken pursuant to § 6–15, "was an unconstitutional prior restraint of the Plaintiffs' First Amendment right to engage in non-obscene expression and on the Plaintiffs' freedom of expression." (Mot. For Inj. Relief at 2–3.) In support of this claim, Plaintiffs rely *solely* upon the case of *Cohen v. City of Daleville*, 695 F.Supp. 1168 (M.D.Ala.1988) (Thompson, J.). However, for the reasons set forth herein, the court concludes that the reasoning of *Cohen* does not govern the instant matter and, therefore, Plaintiffs fail to show a substantial likelihood of success on the merits of their prior restraint claim.

In *Cohen*, the plaintiff ("Mr.Cohen") was "a public purveyor of sexually explicit videotapes in Daleville, Alabama." *Id.* at 1169. Mr. Cohen experienced "trouble with the law" in the course of conducting his business, and in 1987 Mr. Cohen was arrested and pleaded guilty to violating an anti-obscenity law which prohibited the distribution of obscene videotapes. *See id.* at 1169–70. The charge was a misdemeanor and Cohen paid a $1,000 fine. *See id.* at 1170. Two months later, "the Daleville City Council notified Cohen that it was going to conduct a public hearing with respect to the issue of revoking his business license," pursuant to Daleville City Code § 6–15 ("§ 6–15"). *Id.*

At the public hearing, the Daleville City Council heard evidence regarding Mr. Cohen's distribution of obscene materials and "viewed selected samples from the sexually explicit videotapes the police [had] seized from Cohen's business." *Id.* Mr. Cohen's attorney did not offer any evidence, but merely stated that the proposed revocation would "constitute an impermissible prior restraint." *Id.* One week after the hearing, "the city council issued a statement finding that Cohen had conducted his business both immorally and illegally, and ordering that Cohen's business license be revoked for 90 days." *Id.* The specific grounds cited for the revocation were as follows:

> [T]hat Cohen had conducted his business in a manner 'detrimental to the public morals,' so as 'to constitute a nuisance' [and] ... that he had operated his business 'in an illegal manner as evidenced by [his] ... plea of guilt ... to criminal charges arising from [his] activities on Business premises.

*Id.* (quoting Daleville City Council's Revocation Order.) Thereafter, Mr. Cohen filed a lawsuit pursuant to 42 U.S.C. § 1983, "charging that the city's [ ] decision to revoke his business license, constitute[d] a 'prior restraint,' in violation of the [F]irst [A]mendment to the United States Constitution." *Id.* at 1169.

In response, the City of Daleville ("Daleville") argued that the revocation of Mr. Cohen's license did not constitute a prior restraint of speech because the revocation was meant to serve only as a punishment for Cohen's admitted violation of anti-obscenity laws, not as a "suppression of presumptively protected materials." *Id.* at 1171–72. In essence, Daleville's primary justification for its action was that Mr. Cohen had undisputedly distributed obscene materials in the past and, therefore, deserved to be punished accordingly. *See id.* Thus, for reasons pertaining directly to the obscene materials that Mr. Cohen had distributed in the past, Daleville sought to rationalize the revocation of Cohen's license.

However, the *Cohen* court found no merit in Daleville's argument and concluded that the revocation of Cohen's business license was a prior restraint of speech. In reaching this conclusion, the court found that "Daleville revoked Cohen's license to prevent future sales of sexually explicit videotapes, and not for the purpose of punishing him for having committed an illegal or immoral act at his store." *Id.* at 1172. Therefore, because "Daleville primarily intended to restrain Cohen's exercise of [F]irst [A]mendment rights," the court found that Daleville's actions consti-

tuted an impermissible prior restraint of presumptively protected speech. *Id.* at 1173. Accordingly, the court enjoined Daleville from "enforcing its order revoking Cohen's business license." *Id.*

 This court, however, finds that the reasoning in *Cohen* does not control the instant action primarily because the reasons for the revocation of the Fantasies' license are quite different than the reasons for the revocation of Cohen's license.[8] Here, Defendants offer the following justi-

8. Further, the rationale in *Cohen* does not control the instant case because the form of speech involved in *Cohen* differs from the form of expression involved in the instant action. *Cohen* dealt with the distribution of video tapes, which is a "presumptively protected" form of speech. 695 F.Supp. at 1171. In contrast, the instant action involves nude dancing, which is a form of expression that garners only a limited amount of protection under the First Amendment. *See supra* note 7.

9. Plaintiffs admit that they were operating Fantasies without a health permit, which is a violation of City Ordinance and State Law. (App. A at 30.) Plaintiffs, however, deny responsibility for this violation and claim that Defendants "erred in issuing a restaurant license to Fantasies when [Plaintiffs had] asked for a 'Coffee Shop' license." (Pl.s' Br. at 3.) Apparently, Plaintiffs contend that the issuance of a "Coffee Shop" license would have excused them from obtaining a health permit. (*Id.*) (citing Chapter 420–3–22.36 of the Rules of State Board of Health, which states that "[e]stablishments serving *only coffee* in single-service cups and utilizing single-service stirrers and non-potentially hazardous coffee condiments *do not require a permit or inspections*") (emphasis added.)

The court notes, however, that Plaintiffs admittedly served more than just coffee in Fantasies. (Jt.Stip. of Facts ¶ 6) ("Non-alcoholic drinks were mixed, blended, and dispensed in Fantasies along with ice which was scooped from an ice chest."). Therefore, Plaintiffs did not qualify for the "Coffee Shop" license cited in their Brief. (Pl.s' Br. at 3.) Further, the Department of Health Official who inspected Plaintiffs' premises "testified that any place that dispenses, mixes or blends drinks, or dispenses ice with a scoop, must have a health permit. Therefore, Fantasies should have had a 'limited restaurant' health permit and in operating without such a permit, was in violation of State Law." (Jt.Stip. of Facts ¶ 12B.) Based on the fore-

fications for the revocation: (1) Plaintiffs were operating Fantasies without a health permit, which is a violation of City Ordinance and State Law (Jt.Stip. of Facts ¶ 5; ¶ 12B; App. A at 30);[9] (2) Plaintiffs, in violation of State Law, obtained the Fantasies license under false pretenses (Jt.Stip. of Facts ¶ 5; ¶ 12A; ¶ 12D);[10] (3) Plaintiffs, in violation of City Ordinance, underreported their gross receipts and consequently, underpaid their taxes for the month of July, 1999[11] (*Id.* at ¶ 9; ¶ 12D;

going, the court finds no merit in Plaintiffs' unsupported argument that they should not be held responsible for failing to obtain a health permit required by law.

10. Alabama Code Section 40–12–8 provides that:

Any person who *shall knowingly make any false affidavit or certificate* in connection with the ordering or procuring of a license to carry on any business or do anything in this state for which a license is required shall be guilty of a misdemeanor....

ALACODE § 40–12–8 (1998 Supp.). The Daleville Police Chief testified that Plaintiffs violated this statute by making certain factual misrepresentations to the Administrative Clerk who issued the Fantasies license. (Jt.Stip. of Facts ¶ 12D.) For instance, Plaintiffs said they wanted a "Coffee Shop" license for Fantasies. (Pl.s' Br. at 3.) However, Fantasies was never used as a "Coffee Shop," but rather it was used strictly as an erotic dancing club. Further, Plaintiffs stated that they would only serve "pre-packaged food" in Fantasies. (Jt.Stip. of Facts ¶ 5.) However, Daleville's Police Chief testified "that no pre-packaged food was found on the Fantasies premises upon several inspections by City and State Investigators." (*Id.* ¶ 12D.)

In response, Plaintiffs argue that "[t]here is no provision of the Daleville Code [ ] that requires the applicant to note the type of entertainment to be provided on the application for a license." (Pl.s' Br. at 3.) Yet Plaintiffs do not deny that they completely misrepresented the nature of their business to the clerk who issued the Fantasies license. Therefore, the court finds Plaintiffs' argument unpersuasive.

11. Section 6–9 of the Daleville City Code provides that:

It shall be unlawful for any person to knowingly or willingly make a false written affidavit as to the amount of stock on hand or volume of gross receipts, revenue or business....

App. A at 32–33; 55–56; Def.s' Br. at 7); (4) Plaintiffs were operating their business in violation of Daleville Code Sections 3–27 through 3–30, which prohibit sexual conduct and nudity in establishments dealing in alcoholic beverages [12]

> DALEVILLE, ALA., CODE § 6–9 (1977). The Daleville Chief of Police testified that Plaintiffs violated this statute by under-reporting their gross receipts for the month of July 1999. (Jt.Stip. of Facts ¶ 12D.) In support of this testimony, Defendants submitted evidence showing that Plaintiffs reported $3,363 of total revenue for T–Backs and Fantasies in the month of July, 1999. (Def.s' Ex. 7 at 6; App. A at 32; Jt.Stip. of Facts ¶ 12D.) Yet, in an affidavit submitted to this court on September 24, 1999, Plaintiff Connolly states that "for the month of July 1999, door revenues were $4,035" from Fantasies alone. (Def.s' Ex. 8.)
>
> Plaintiffs acknowledge this discrepancy, but claim that "if it's an under-payment, it's an honest under-payment." (App. A at 33; Pl.s' Br. at 4.) Further, Plaintiffs set forth several vague arguments as to why they should not be held responsible for their mistake. (Pl.s' Br. at 3–4; App. A at 33, 56–58.) However, these arguments are cursory, conclusory, and do not explain why Plaintiffs failed to report their entire gross income for the month of July, 1999. Therefore, the court finds Plaintiffs' arguments to be unpersuasive and, thus, will forego any further discussion thereof.

**12.** Section 3–27 of the Daleville City Code City states that:

> The purpose of sections 3–27 through 3–30 is to prohibit sexual conduct and nudity in establishments dealing in alcoholic beverages and prohibit persons owning, maintaining or operating such establishments from permitting any such prohibited activity. DALEVILLE, ALA., CODE § 3–27 (1987). Section 3–28 of the Daleville City Code defines establishments dealing in alcoholic beverages as follows:
>
> [A]ny business establishment operating within the corporate limits of the city which sells, dispenses or allows the consumption of alcoholic beverages on the premises. DALEVILLE, ALA., CODE § 3–28 (1987). Ordinances, such as Daleville's, that prohibit nude dancing in establishments where alcoholic beverages are sold have long been upheld by the United States Supreme Court and by the Eleventh Circuit. *See Sammy's of Mobile v. City of Mobile,* 140 F.3d 993, 995–996 (11th Cir.1998). However, Plaintiffs assert that these ordinances do not apply to them because of a common wall that separates T–Backs (the nightclub where alcohol is sold) from Fantasies (the nude dancing club where

(Jt.Stip. of Facts ¶ 12D; Def.s' Prelim.Br. at 5–6; Def.s' Br. at 9–10); and (5) Plaintiffs were allowing intimate physical contact to occur between nude dancers and customers, which constitutes a nuisance and is against public health and morals. [13]

> alcohol is not sold). (App. A at 38; Pl.s' Br. at 3–4.) In essence, Plaintiffs contend that T–Backs and Fantasies are two separate establishments and, because Fantasies does not serve alcohol, nude dancing can legally be performed there.
>
> On the other hand, Defendants aver that Plaintiffs' attempt to characterize T–Backs and Fantasies as two separate establishments is merely a "sham" to get around the City Ordinances which prohibit nude dancing and alcohol on the same premises. (Def.s' Br. at 10; App. A at 38.) Defendants argue that "[t]he activities of [Plaintiffs] are conducted in the same structure, under the same roof, with only a nominal division of the room by a partition, where patrons are channeled through the nightclub for alcohol consumption, then allowed to step through a doorway in the partition to view nude dancers and have private nude lap dances, then step back into the nightclub for further alcohol consumption." (Def.s' Br. at 10; App. A at 34.) In short, Defendants claim that Plaintiffs have violated City Ordinances by operating a nude dancing club and a nightclub in the same building, despite the fact that the two clubs are separated by a partition.
>
> Although the Parties have cited no authority regarding this issue, common sense indicates that a slight separation between facilities where alcohol is sold and facilities where nude dancing is conducted is not sufficient to overcome valid ordinances that prohibit the combination of nude dancing and alcohol on the same premises. *See generally Ranch House,* 22 F.Supp.2d at 1306, n. 7. Indeed, the Alabama Supreme Court recently held that "the City of Anniston has the authority to forbid a business from permitting the drinking of alcoholic beverages and nude dancing at the same time," despite the fact that the business separates the area where alcohol is sold from the area where nude dancing is conducted. *Ranch House v. City of Anniston,* 678 So.2d 745, 746 (Ala.1996). Therefore, based on the foregoing, the court is unpersuaded by Plaintiffs' argument concerning the separation between T–Backs and Fantasies.

**13.** Plaintiffs concede that intimate contact does sometimes occur between nude dancers and customers, but Plaintiffs attempt to control such conduct by closely monitoring each

(Jt.Stip. of Facts ¶ 12D; App. A at 47–49; 52–54.) Although Plaintiffs were given notice of these alleged infractions before the October 14, 1999 due process hearing, (Def.s' Ex. 11 at 2; App. A at 57–58), they presented little if any defense to these charges before the City Council. (Jt.Stip. of Facts ¶ 12; App. A. at 29–30; Def.s' Br. at 14.) However, Plaintiffs now attempt to raise various defenses for the first time which the court finds unpersuasive. *See supra* notes 9–13.

In contrast, Defendants presented substantial evidence in support of revocation, (Joint Stip. of Facts ¶ 12), such that "the Council and Mayor [14] voted unanimously to revoke Fantasies Business License No. 19990561 pursuant to Daleville Code Sec[tions] 6–14 and 6–15." (*Id.* ¶ 13.) Therefore, based on the evidence before the court, it appears that Defendants were well-justified in revoking the Fantasies' license and, unlike the Defendants in *Cohen*, their justifications had nothing to do with the suppression of protected speech. Consequently, unlike the *Cohen* court, this court cannot find that Defendants' primary intention was to restrain Plaintiffs from exercising their First Amendment rights.[15] Thus, the court finds that Plaintiffs have failed to establish a substantial likelihood of success on the merits of their prior restraint claim and preliminary injunctive relief is therefore unwarranted.[16]

---

dance and by taking remedial action whenever improper contact occurs. (App. A at 35–37.)

**14.** Plaintiffs argue that "[t]he fact that the Mayor voted, ... *might* be in violation of the law that governs the Mayor–Council form of government and should nullify the Revocation Order[.]" (Pl.s' Br. at 5) (citing ALACODE § 11–43C–2 (1989 Supp.)) (emphasis added.) However, as Defendants correctly assert, § 11–43C–2 only applies to "Class 5 municipalit[ies] in the state of Alabama." ALACODE § 11–43C–1 (1989 Supp.). Class 5 municipalities are defined as "[a]ll cities with a population of not less than 25,000 and not more than 49,999 inhabitants." ALACODE § 11–40–12(a) (1989 Supp.). Because the City of Daleville has less than 5,999 inhabitants, (Def.s' Br. at 10; 1990 Federal Decennial Census), § 11–43C–2 does not apply. Rather, § 11–43–2 of the Alabama Code applies in this instance and allows a mayor to vote as follows: "At his discretion he [or she] may vote as a member of the Council on any question coming to a vote." ALACODE § 11–43–2 (1989 Supp.). Therefore, based on the foregoing, the court finds no merit in Plaintiffs' argument concerning the mayor's vote.

**15.** Plaintiffs insinuate that the revocation of the Fantasies license was a pretext for suppression of First Amendment protected expression. (Pl.s' Br. at 8.) However, Plaintiffs do not expound upon this allegation and the court is extremely hesitant to strike down "otherwise constitutional legislation on the basis of a speculated illicit legislative motive." *International Food & Beverage Systems v. City of Fort Lauderdale*, 794 F.2d 1520, 1525 (11th Cir.1986). Therefore, Plaintiffs' mere insinu-

ation of pretext does not alter the court's findings.

**16.** The court notes that the instant action is much more closely akin to the case of *Arcara v. Cloud Books*, 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986), than it is to *Cohen*. In *Arcara*, the United States Supreme Court upheld the revocation of an adult bookstore owner's business license because the store had become a scene for prostitution and other public sex acts which were prohibited by a nuisance provision of New York's public health code. *Id.* at 699, 106 S.Ct. 3172. The Court held that "[b]ookselling in an establishment used for prostitution does not confer First Amendment coverage to defeat a valid statute aimed at penalizing and terminating illegal uses of premises." *Id.* at 707, 106 S.Ct. 3172. The Court also held that the revocation did not constitute a prior restraint of protected speech for two reasons. First, because "respondents are free to carry on their bookselling business at another location, even if such locations are difficult to find." *Id.* at 706, n. 2, 106 S.Ct. 3172. And second because "the closure order has nothing to do with any expressive conduct at all." *Id.* at 706, n. 2, 106 S.Ct. 3172.

Although Defendants do not cite *Arcara* in their Brief, the court notes that *Arcara* seemingly controls the instant action and defeats Plaintiffs' prior restraint claim. As in *Arcara*, Plaintiffs here are apparently free to conduct their exotic dancing operation at another location in Daleville, so long as they do so legally. Also, like *Arcara*, the revocation order in the instant case was based upon valid justifications that had nothing to do with expressive conduct. *See supra* notes 9–13 and accompanying text. Finally, the New York nuisance provision examined in *Arcara* is

Finally, Plaintiffs contend that the revocation of the Fantasies license constitutes a violation of their due process rights afforded by the Fourteenth Amendment. (Mot. For Inj. Relief at 3.) However, Plaintiffs fail to elaborate on this contention and do not even mention it in their Brief. Therefore, the court finds that Plaintiffs have failed to carry their burden of persuasion as to this claim and, thus, preliminary injunctive relief is not appropriate.[17]

## ORDER

Based on the foregoing, its is CONSIDERED and ORDERED that Plaintiffs' Motion To Reconsider Denial Of Preliminary Injunction be and the same is hereby DENIED.

Because the Parties have stipulated that all evidence is presently before the court and that the Parties wish to proceed on the merits of this case, the court hereby DIRECTS Plaintiffs and/or Defendants to file a Motion For Summary Judgment along with a detailed brief in support of Summary Judgment on or before February 1, 2000.

---

analogous to § 6–15 of the Daleville City Code in that both laws focus not on the suppression of protected speech, but rather on the termination of illegal conduct.

Therefore, it appears that in light of *Arcara*, Plaintiffs are unable to show a substantial likelihood of success on the merits of the prior restraint claim. However, because this case is at the preliminary injunction stage, the court makes no determination on the merits of the prior restraint claim and will forego any further discussion thereof. In the event that this case proceeds to the merits, the court will expect the Parties to fully brief *Arcara* and discuss its relevance to the instant action.

17. In the alternative, the court notes that because Plaintiffs concede that they were afforded a full due process hearing before the revocation occurred, (Jt.Stip. of Facts ¶ 12), the likelihood of success on the merits of their due process claim is greatly diminished. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (holding that due process is satisfied if "some form of hearing is required before an individual is finally deprived of a property interest"). Therefore, even if Plaintiffs had adequately addressed this claim, it is doubtful that they could have established a substantial likelihood of success on the merits.